J. Stephen Peek, Esq. (1758)
Bryce K. Kunimoto, Esq. (7781)
Robert J. Cassity, Esq. (9779)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
Tel: (702) 669-4600
Fax: (702) 669-4650
speek@hollandhart.com
bkunimoto@hollandhart.com
bcassity@hollandhart.com

*Attorneys for Defendants Aruze Gaming America, Inc. and Kazuo Okada*

Jeffrey S. Love (*pro hac vice* forthcoming)
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204
jeffrey.love@klarquist.com

*Attorneys for Defendant Aruze Gaming America, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNIVERSAL ENTERTAINMENT CORPORATION, a Japanese corporation<br><br>Plaintiff,<br><br>v.<br><br>ARUZE GAMING AMERICA, INC., a Nevada corporation, KAZUO OKADA, an individual<br><br>Defendants. | CASE NO.:  2:18-00585-RFB-GWF<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Defendants Aruze Gaming America, Inc. ("AGA") and Kazuo Okada ("Mr. Okada") (together, "Defendants"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the claims for patent infringement (Counts One, Two, Three and Four), tortious interference with prospective economic advantage (Count Five), breach of fiduciary duty (Count Six), the fraudulent misrepresentation claim (Count Seven), and the unjust enrichment claim (Count Eight)

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

asserted by Universal Entertainment Corporation ("UEC") in its Complaint (ECF No. 1) ("Compl.").

This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file, and any oral argument the Court may allow.

DATED this 29th day of May 2018.

By  /s/ J. Stephen Peek
J. Stephen Peek, Esq. (1758)
Bryce K. Kunimoto, Esq. (7781)
Robert J. Cassity, Esq. (9779)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Attorneys for Defendants Aruze Gaming America, Inc. and Kazuo Okada*

Jeffrey S. Love (*pro hac vice* forthcoming)
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204

*Attorneys for Defendant Aruze Gaming America, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

Universal Entertainment Corporation ("UEC") was founded by Kazuo Okada in 1969, and for several decades Mr. Okada served as the Chairman of the Board of Directors of UEC and has been largely responsible for the success of the company. Mr. Okada owns shares in UEC through a company he created, Okada Holdings, Limited ("Okada Holdings"), which in turn owns 67% of the outstanding shares of UEC. In mid-2017, UEC's President Mr. Jun Fujimoto and some of its directors orchestrated a scheme to oust Mr. Okada from UEC by defrauding Mr. Okada's daughter into transferring her shares of Okada Holdings into a trust

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

controlled by Tomohiro Okada. This allowed Tomohiro Okada (Mr. Okada's son) to vote on behalf of Okada Holdings to elect a slate of directors that eliminated Mr. Okada from the board of directors of UEC.  Seeking to entrench his position of control over UEC, UEC's President has now caused UEC to assert meritless patent infringement and related tort claims against Aruze Gaming America, Inc. ("AGA") and Mr. Okada in this lawsuit.  As discussed in greater detail below, the Complaint fails to state a claim upon which relief can be granted against AGA and Mr. Okada, and the Court should dismiss UEC's claims for at least the following reasons:

*First*, the Court should dismiss the patent infringement claims (Counts One through Four) because the Complaint alleges facts showing that UEC's officers in charge of its U.S. business and patent portfolio authorized AGA to make the Accused Products and to freely use UEC's patents.  Specifically, the Complaint alleges that AGA's actions were authorized by Mr. Okada, UEC's founder, chairman of the board from 2006 to 2017, and officer in charge of UEC's foreign business (including the United States), and by Mr. Yaegashi, General Manager of UEC's Patent Department from 2002 to 2013.   In light of these admissions, the patent infringement claims necessarily fail.

Alternatively, the Court should dismiss the contributory patent claims (in Counts One, Two, Three and Four) because UEC fails to specifically allege that either of the defendants "offers to sell or sells … or imports … a component of a patented machine …, knowing the same to be especially made … for use in an infringement of such patent, and not … suitable for substantial noninfringing use…."  35 U.S.C. § 271(c).  For example, UEC fails to allege a "component" and fails to allege that any such component is "not … suitable for substantial noninfringing use."  Accordingly, Counts One, Two, Three and Four fail to state a claim for contributory patent infringement under 35 U.S.C. § 271(c).  In addition, the Court should dismiss Counts One and Two, which assert patents reissued in 2017 with all claims amended, based on statutory intervening rights under 35 U.S.C. § 252.

*Second*, the Court should dismiss UEC's claims for unjust enrichment (Count Eight), tortious interference with prospective economic advantage (Count Five), and breach of fiduciary

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

duty (Count Six) because these claims are based on the alleged patent infringement, and (a) UEC authorized AGA's alleged conduct so it is not infringement, and (b) tort claims based merely on patent infringement are preempted by federal patent law.   Under the U.S. Constitution's preemption doctrine, the Patent Act preempts state law claims that are based merely on allegations of patent infringement.   The Federal Circuit has adopted a conduct-based approach to determine whether the nature of the conduct allegedly giving rise to state law tort claims are based on the same conduct that is governed by patent law.   Because the conduct giving rise to the unjust enrichment, tortious interference, and breach of fiduciary duty claims are based on the same conduct that gives rise to the federal patent infringement claims, these claims are preempted under federal patent law.

*Third*, the claim for tortious interference with prospective economic advantage (Count Five) should be dismissed for failure to state a claim for the independent reason that the Complaint does not identify any prospective contract with which Defendants allegedly interfered, any third party with whom UEC purportedly had a prospective contract, and any interference by the Defendants.

*Finally*, UEC's fraudulent misrepresentation claim (Count Seven) fails because UEC did not plead fraud with particularity as required under Rule 9(b).   Specifically, UEC failed to identify any specific affirmative representation by Mr. Okada, when and where Mr. Okada made the misrepresentation, to whom he made the representation, how any such representation was false, or how UEC relied upon any such misrepresentation.   And the sole allegation regarding omission of material facts likewise provides scant detail woefully insufficient to support a fraudulent misrepresentation or omission claim.

For these reasons, as discussed in greater detail below, the Court should grant Defendants' Motion to Dismiss.

///

///

///

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

## II.

## SUMMARY OF FACTUAL ALLEGATIONS[1]

### A.   Background

Universal Entertainment Corporation ("UEC") is a Japanese corporation publicly traded on the Tokyo Stock Exchange JASDAQ. Compl. ¶ 1. Mr. Okada was the founder of UEC and served as Representative Director (equivalent to CEO) from June 1972 to September 2004, and from January 2006 until June 2017 served as a director and chairman of the Board of Directors of UEC. *Id.* ¶ 50.

In 2005, AGA manufactured gaming devices for sale outside of Japan and was entirely owned by UEC, operating as a consolidated subsidiary of UEC. *Id.* ¶ 57. In August 2008, Okada purchased shares of AGA from UEC and UEC issued additional AGA stock to Mr. Okada, resulting in UEC holding 49.95% of AGA's stock and Mr. Okada holding the remaining 50.05%. *Id.* ¶ 58. In December 2008, Mr. Okada agreed to purchase the remaining stock of AGA owned by UEC, and the transfer of these shares to Mr. Okada was completed in March 2010. *Id.*

### B.   The Asserted Patents

UEC alleges that it is the owner of certain patents, namely, U.S. Reissue Patent No. 46,472 ("the `472 patent"), U.S. Reissue Patent No. 46,473 ("the `473 patent"), U.S. Patent No. 8,088,013 ("the `013 patent") and U.S. Patent No. 8,246,047 ("the `047 patent") (collectively, the "Asserted Patents"), which relate to slot machine type gaming devices and certain aspects of their construction and operation. Compl. ¶ 11. The `472 patent and the `473 patent issued on July 11, 2017. *Id.* ¶¶ 12, 14. The `013 patent issued on January 3, 2012. *Id.* ¶ 16. The `047 patent issued on August 21, 2012. *Id.* ¶ 18. UEC alleges that certain products sold by AGA (the "Accused Products") infringe one or more claims of the Asserted Patents. *Id.* ¶ 48.

///

---

[1] Defendants vigorously dispute the factual allegations set forth in UEC's Complaint. Nevertheless, Defendants are presenting the factual allegations as they are pleaded in UEC's Complaint for purposes of the instant motion.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

### C.   Mr. Okada, Its Officer, Director, and Chairman of the Board Authorized AGA's Sale of the Accused Products.

UEC alleges that Okada, UEC's director and Chairman of the Board of Directors, also directed AGA employees in the State of Nevada in their activities that resulted in the infringement by AGA of UEC's patents. Compl. ¶ 4. "In approximately July 2010, … Okada, who was the Chairman of the Board of Directors, was placed in charge of UEC's foreign business (including the United States)." *Id.* ¶ 53. "The decision in July 2010 of placing … Okada in charge of UEC's foreign operations of UEC (including the United States) . . . also led to a division of UEC's Patent Department into domestic (within Japan) and foreign (including the United States) sections, with each section reporting to Fujimoto and Okada, respectively…" *Id.* ¶ 54.

UEC alleges that Mr. Nobuo Yaegashi was General Manager of UEC's Patent Department from March 2002 to March 2013. *Id.* ¶ 55. Yaegashi reported to Mr. Okada and took direct instructions from Mr. Okada throughout this period of time. *Id.* UEC alleges that Mr. Okada "positioned himself to direct, control or influence UEC's Patent Department through Yaegashi, the General Manager of UEC's Patent Department, who reported to Okada and took direction from Okada throughout this period of time." Mr. Okada later "instructed Yaegashi to cease all discussions relating to the execution of a license agreement between UEC and AGA. Okada further, upon information and belief, instructed Yaegashi not to seek compensation from AGA for the use of any of UEC's patents." *Id.* ¶ 64. Yaegashi followed both of these directives from Mr. Okada. *Id.* UEC further alleges that "Okada directed employees of AGA located in Nevada to develop and produce the Accused Products, which made use of the technology claimed in the Asserted Patents." *Id.* ¶ 70.

### D.   Allegations Regarding UEC's Claims for Relief

UEC asserts four patent infringement claims against AGA; claims for tortious interference with prospective business advantage and unjust enrichment against AGA and Mr.

Okada; and breach of fiduciary duty and fraudulent misrepresentation claims against Mr. Okada.

With regard to the patent infringement claims, as discussed above, UEC alleges that Mr. Okada, UEC's director and Chairman of the Board, authorized AGA's use of the Asserted Patents. UEC's Complaint does not identify or describe a "component of a patented machine," or allege that any such "component" is "not a staple article or commodity of commerce suitable for substantial noninfringing use." Rather, UEC identifies only the entire machine, *e.g.*, "the G-ENEX family of slot machine games," as giving rise to its patent infringement claims. Compl. ¶¶ 79, 83, 88.

UEC's tortious interference claim alleges that Defendants are aware of "UEC's contracts or relationships with its customers and potential customers with respect to licensing of the Asserted Patents." *Id.* ¶ 100. However, the Complaint does not identify any prospective contracts or any of the third parties with which UEC claims the Defendants interfered. UEC alleges that "Defendants intentionally interfered with UEC's prospective relationships by exploiting the Asserted Patents without permission or justification." *Id.* ¶ 101.

UEC's unjust enrichment claim alleges that AGA and Mr. Okada improperly received monies or other benefits "[b]y engaging in the conduct alleged in this Complaint." *Id.* ¶ 122. The conduct alleged in the complaint by which AGA and Mr. Okada allegedly improperly received monies and other benefits concerns the benefits derived from the alleged infringement of UEC's Asserted Patents.

With regard to the breach of fiduciary claim, UEC alleges that Mr. Okada owed a fiduciary duty to UEC as an officer and director. *Id.* ¶ 106. UEC alleges that Mr. Okada breached his fiduciary duty to UEC "by allowing and/or directing AGA to infringe patents owned by UEC" and by not disclosing "the infringing actions of AGA" and by failing to protect the Asserted Patents from AGA's alleged infringement. *Id.* ¶ 107.

Finally, **in** support of its fraudulent misrepresentation claim, UEC alleges that beginning in March 2009, Mr. Okada "instructed Yaegashi to engage in what amounted to sham

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

negotiations between UEC and AGA" for a license agreement, "to license those UEC patent rights to AGA that were necessary for AGA to continue manufacturing gaming devices." *Id.* ¶¶ 62, 114. UEC does not allege that Mr. Okada (or anyone) would have bought AGA without a license to UEC patents "necessary" to continue AGA's business, and does not allege that UEC ever proposed in license negotiations any payment beyond the purchase of AGA. UEC alleges that Mr. Okada "instructed Yaegashi to cease such negotiations" after Mr. Okada had acquired the shares of AGA from UEC, but that Mr. Okada failed to disclose to UEC that the negotiations were terminated, thereby allowing AGA to exploit UEC's Asserted Patents. *Id.* ¶ 116.

## III.

## LEGAL ARGUMENT

### A.    Legal Standard

Rule 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as it alleges (*Twombly–Iqbal* review).  *Sifre v. City of Reno*, 2014 WL 4232570, *2 (D. Nev. Aug. 26, 2014).

**B.     The Complaint Fails To State A Claim For Patent Infringement Because UEC Alleges That It Authorized AGA's Actions**

The patent infringement claims (Counts 1-4) fail to state a claim because the Complaint alleges facts which show that UEC authorized AGA's actions.  To state a claim for patent infringement, a Complaint must allege facts showing that the defendant acted "without authority" of the patent owner. 35 U.S.C. § 271(a).  But as described in detail above, the Complaint alleges facts showing that UEC's officers in charge of its U.S. business and patent portfolio authorized AGA to make the Accused Products and to freely use UEC's patents. Compl. ¶¶ 3, 4, 50, 53-55, 61-64, 70.  Specifically, the Complaint alleges that AGA's actions with respect to the use of UEC's Asserted Patents were expressly authorized by Mr. Okada, UEC's founder, chairman of the board from 2006 to 2017, and officer in charge of UEC's foreign business (including the United States), and by Mr. Yaegashi, General Manager of UEC's Patent Department from 2002 to 2013.  *Id.*

UEC's specific allegations that its officers authorized AGA's actions are not undermined by the Complaint's boilerplate allegation that AGA acted "without authority" merely because *other* UEC officers, such as Mr. Fujimoto, UEC's CEO and head of business in Japan, were allegedly out of the loop (*e.g.*, Compl. ¶¶ 52-55, 77, 81, 85, 92).  *Everybody* at UEC does not have to authorize AGA's actions.  The pertinent question is whether the Complaint alleges that *anyone* at UEC with authority to do so authorized AGA's actions.  The Complaint alleges that the two UEC senior officers most directly responsible for its U.S. business and

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

patents authorized AGA's actions, and the Complaint does not allege that they lacked authority to do so.

UEC's specific allegations that its officers orally authorized AGA's actions are not undermined by UEC's other allegations that it did not provide AGA with a written patent license and did not require a royalty (Compl. ¶¶ 62-65).  "Licenses may be oral."  *Enzo APA & Son v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358, 1364 (Fed. Cir. 2003).  And licenses may be royalty-free.  *See, e.g., Imation Corp. v. Koninklijke Philips Electronics N.V.*, 586 F.3d 980, 986 (Fed. Cir. 2009) (enforcing "royalty-free license").

AGA's actions do not infringe UEC's patents because the Complaint plainly alleges that AGA's actions were authorized by UEC's officers in charge of its U.S. business and patents. Accordingly, the Complaint fails to state a claim of patent infringement.

**C.** **The Contributory Patent Infringement Claims Fail Because They Do Not Describe a Component of a Patented Machine and Do Not Allege That Any Component is Not Suitable for Substantial Noninfringing Use**

The patent infringement claims (Counts 1-4) also fail to state a claim for contributory infringement because they do not identify or describe a "component of a patented machine," or allege that any such "component" is "not a staple article or commodity of commerce suitable for substantial noninfringing use," as required by statute, pleading rules and case law.

Contributory patent infringement has precise statutory requirements.  It requires that one "offers to sell or sells ... or imports ... a component of a patented machine ..., knowing the same to be especially made ... for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use...."  35 U.S.C. § 271(c).

Under *Twombly* and *Iqbal*, to state a claim for contributory infringement, a complaint's factual allegations must identify such a component and allege that it is not a staple article or commodity of commerce suitable for substantial noninfringing use.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) ("To state a

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ◆ Fax: (702) 669-4650

claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal of contributory infringement where the "Original Complaint contain[ed] no allegations regarding substantial non-infringing uses").

The Complaint's contributory infringement counts do not meet that standard. Count One is exemplary.  Its lone contributory infringement allegation states:

> Further, on information and belief, AGA has contributed to and/or induced, and is contributing to and/or inducing, the infringement of the claims of the '472 patent (claim 1 et seq.). On information and belief, the direct infringement contributed to and/or induced by AGA includes at least the operation by gaming establishments, and their customers, of the G-ENEX family of slot machine games. On information and belief, AGA has the specific intent to encourage or direct the end users to infringe the '472 patent by practicing all the limitations of at least one claim of the '472 patent. AGA induces these users to operate the G-ENEX family of slot machine games knowing that these acts constitute infringement of the '472 patent and with specific intent to encourage those acts and encourage infringement.

Compl. ¶ 79.

This allegation does not identify any "component" of a patent machine, nor allege that any such "component" has no substantial non-infringing use.  Rather, it identifies only the entire machine, "the G-ENEX family of slot machine games."  That is insufficient to state a claim for contributory infringement.  *See, e.g., BioCell Tech. LLC v. Arthro-7*, No. SACV1200516JVSRNBX, 2012 WL 12892937, at *9 (C.D. Cal. Nov. 19, 2012) (dismissing claim for contributory infringement when item identified in complaint embodies entire alleged infringement, not a mere component).

Counts Two, Three and Four have nearly identical, boilerplate contributory infringement allegations.  They also fail to identify a "component" or allege "no substantial non-infringing use."  *See* Compl. ¶¶ 83, 88, 98.   Accordingly, they also fail to state a claim for contributory patent infringement.

Accordingly, the contributory infringement claims in paragraphs 79, 83, 88, 98 of

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

Counts One, Two, Three and Four of the Complaint should be dismissed for failure to state a claim.

### D. Patent Infringement Counts One and Two Assert Patents Reissued In 2017, And Fail Due To AGA's Intervening Rights Under 35 U.S.C. § 252.

The '472 and '473 patents asserted in Counts One and Two were reissued on July 11, 2017, and copies of those patents are set forth in Complaint Exhibits A and B.  Compl. ¶¶ 12, 14.  On their face, the reissued claims were all newly added or substantively amended by direct amendment or by being dependent on a directly amended claim (or both).  *See* Compl. Exs. A and B (showing amended claim terms as italicized or bracketed).

The Complaint alleges infringement of "one or more claims of the '472 patent (claim 1 *et seq.*)" (Complaint ¶ 77).  All three of that patent's original independent claims (1, 6, 10) were substantively amended, with multiple claim elements added or deleted.  All claims dependent on claims 1, 6 and 10 incorporate that substantive amendment.  For example, the "controller" element was deleted from each of those independent claims, and also, by incorporation, from all the claims dependent on any of claim 1, 6 or 10 (claims 2-5, 7-9, and 11-17).  In addition, one independent claim (18) was newly added, along with three new claims dependent on claim 18 (claims 19, 20 and 21).

The Complaint alleges infringement of "one or more claims of the '473 patent (claim 14 *et seq.*)" Compl. ¶ 81.  Claims "14 *et seq.*" are all new claims added during reissue, as shown in Complaint Exhibit B (the reissue patent italicizes those claims, showing that they were newly added).

The Complaint does not allege infringement of claims 1-13 of the '473 patent.  But even if it did, those claims were also all amended.  The term "operation table" was added to each independent claim in claims 1-13 (claims 1, 6 and 10), and thereby incorporated into each dependent claim,  The Court may take judicial notice of the Patent Office records of these reissue proceedings, which show that claims 1-13 of the '473 patent were amended to overcome the patent examiner's determination that they were indefinite and so unpatentable, as shown in

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

these excerpts from the Patent Office reissue records of the examiner's rejection dated September 21, 2016 (at page 4), and the patent owner's response ("arguments/remarks made in an amendment) dated December 19, 2016 (at page 13), which are publicly available at https://portal.uspto.gov/pair/PublicPair:

Examiner's rejection:

Application/Control Number: 14/962,087                                              Page 4
Art Unit: 3993

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 1-13 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

In claim 1, line 16, claim 6, line 17, and claim 10, line 15, it is unclear whether the clause "which extends along the width direction of the front door" refers to the cutout portion, the periphery, or the operation table.

Claims 3, 4, 7, 8, 11 and 12 recite once again that the cutout portion is formed at a front and towards a periphery of the table, raising issues of double inclusion.  Further, it is unclear which structure has the same width as the front door.

Patent owner's response:

2.      Claims 1 – 13 stand rejected under 35 USC 112, second paragraph, on grounds that it was unclear whether the clause "which extends along the width direction of the door" in claims 1, 6 and 10 referred to the cutout portion, the periphery, or the operation table.  Applicant has amended such claims to recite, "which operation table extends along the width direction of the front door" for clarity, thereby obviating the rejection.

Claims 3, 4, 7, 8, 11 and 12 were rejected under similar provisions because it was unclear which structure has the same width as the front door and that such claims raised issues of double inclusion.   Applicant has amended such claims to recite "which operation table has substantially the same width as the front door," to thereby obviate the rejection.

Page 13

HOLLAND & HART LLP
9555 Hillrood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

Amendments to overcome unpatentability rejections are almost always substantive. *See The Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) ("it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment").

Accordingly, AGA has a statutory right to continue the use of, to offer to sell, and to sell to others to be used, offered or sale, or sold, the accused gaming machines that AGA made, purchased, offered to sell, or used within the United States, or imported into the United States, prior to the grant of these reissue patents on July 11, 2017, because none of the asserted claims in the reissue patents was in the original patent. *See* 35 U.S.C. § 252 (second paragraph):

> A reissued patent shall not abridge or affect the right of any person … who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. …

UEC's claims should be dismissed to the extent they accuse gaming machines that predate the 2017 reissue of these patents. *See Waters Technologies Corp. v. Aurora SFC Systems, Inc.,* Civil Action No. 11–708–RGA, 2017 WL 3598648 *3 (D. Del. 2017) ("Plaintiff has failed to state a claim under 12(b)(6), but only with respect to allegations of infringement prior to October 14, 2016….  Allegations of infringement from October 14, 2016 onwards that violate Defendants' absolute intervening rights are also dismissed.").

Because UEC does not allege that any accused games were first made, imported or sold only *after* these two asserted patents were reissued in July 2017, these claims should be dismissed in their entirety for failure to state a claim.

### E.   The Claims for Intentional Interference with Prospective Economic Advantage, Unjust Enrichment and Breach of Fiduciary Duty Fail Because UEC Authorized AGA's Alleged Use Of The Patents, And Because the Claims are Preempted Under Federal Patent Law.

Counts 5, 6 and 8 are all tort claims premised on AGA's alleged patent infringement.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

1   Because, as shown above, the Complaint alleges that UEC's officers authorized AGA's alleged

2   use of the patents, there is no patent infringement, and those tort claims fail to state a claim for

3   relief.

4        In addition, those tort claims are preempted because they allege nothing beyond patent

5   infringement.   The United States Constitution grants Congress the power to "promote the

6   progress of science and the useful arts by securing for a limited time" the rights of inventors.

7   U.S. Const. art. I, § 8, cl. 8. Under this authority, Congress passed the federal Patent Act, 35

8   U.S.C. §§ 1-376 (2000). Pursuant to the Supremacy Clause (U.S. Const. art. VI, cl. 2), federal

9   law may preempt state law by three methods: explicit preemption, field preemption, and

10  conflict preemption. *Hunter Douglas v. Harmonic Design, Inc.*, 153 F.3d 1318, 1333 (Fed. Cir.

11  1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d

12  1356 (Fed. Cir. 1999); *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110

13  L.Ed.2d 65 (1990).

14       Federal Circuit law applies to the issue of whether federal patent law preempts a state

15  law claim. *Ultra–Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir.

16  2005). For purposes of patent claims, the Federal Circuit has adopted a conduct-based

17  approach to conflict preemption.  *E.g., CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d

18  933, 939 (D. Minn. 2006) (citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d

19  1318, 1335 (Fed. Cir. 1998)), *overruled on other grounds by Midwest Indus., Inc. v. Karavan

20  Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Thus, "[i]n determining whether the state law

21  claim is in conflict with federal patent law, the Court takes an 'as-applied' approach, focusing

22  on the conduct that forms the basis for the tort law claim. If the conduct at issue in the state tort

23  claim is protected or governed by federal patent law, the tort action is preempted."

24  *CardioVention*, 430 F. Supp. 2d at 939.

25

26  ///

27  ///

28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

### 1.     UEC's Unjust Enrichment Claim is Preempted

UEC's claim for unjust enrichment relies entirely on UEC's patent infringement allegations against AGA and Mr. Okada. Under the U.S. Constitution's Supremacy Clause doctrine of state law claim preemption, the unjust enrichment count must be dismissed.

#### a.     The Unjust Enrichment Claim In Substance Alleges Patent Infringement

The unjust enrichment claim rests on the allegations of patent infringement alleged elsewhere in the Complaint. Specifically, UEC's unjust enrichment claim alleges only that "*[b]y engaging in the conduct alleged in this Complaint*, Defendants have improperly received monies or other benefits and compensation that unjustly enriched them at UEC's expense." Compl. ¶ 122 (emphasis added).

The "conduct alleged in the Complaint" giving rise to unjust benefits to the Defendants is nothing more than the benefits to AGA and Mr. Okada from the alleged infringement of UEC's Asserted Patents.   Accordingly, the conduct that forms the basis of the unjust enrichment claim is the same conduct that forms the basis of the unjust enrichment claim and arguably conflicts with the accomplishment and execution of federal patent law.

#### b.     Federal Patent Law Preempts An Unjust Enrichment Claim That In Substance Alleges Patent Infringement

When state law conflicts with patent law, the state law is preempted by the Supremacy Clause of the U.S. Constitution and has no effect. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989); *see also  Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 982 (Fed. Cir. 2008) ("An unjust enrichment claim is preempted by federal patent law when it conflicts with 'the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting *Ultra-Precision Mfg., Ltd.*, 411 F. 3d at 1377).

Whether a claim for unjust enrichment involving a patent is preempted by federal patent law depends on whether the claim as pled accuses the defendant of obtaining an incremental benefit beyond those attributable to the patent or its infringement. *Ultra-Precision Mfg., Ltd.*,

411 F.3d at 1379-82.  "In the absence of an incremental benefit conferred, any attempt to obtain a patent-like royalty for the making, using or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Id.* at 1382.  The reason is that "state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights." *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003).   Accordingly, courts have repeatedly held that claims similar to the unjust enrichment claim in this case are preempted by federal patent law and must be dismissed.

For example, in *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. CIV.A. 3:08-CV-00302, 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009), the court held that "the third count of the complaint, unjust enrichment, is completely preempted as it simply incorporates the two counts of patent infringement by reference and asserts that these also constitute unjust enrichment on the part of the defendants."   Similarly, in *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *2 (E.D. Tex. Aug. 11, 2015), the court held that because the claim alleged only that Apple received "the benefit of the use of the patented invention," the relief requested would result in a "patent-like royalty," and thus the unjust enrichment claim "is preempted by the Patent Act and must be dismissed."   The unjust enrichment claim in that case, like the allegations here, alleged nothing more than "unjust" enrichment by practicing certain patents without paying a royalty:

> 46. By implementing the relevant GSM and/or UMTS standards, Apple has thus benefited from the patented contributions.
>
> 47. Apple has refused to negotiate a FRAND royalty with Core Wireless, has refused to timely respond to Core Wireless FRAND royalty offer, and has not paid a FRAND royalty for the benefit of using this patented technology.

*Id.*

Further, in *Neonatal Product Group, Inc. v. Shields*, 276 F. Supp. 3d 1120, 1151 (D. Kan. 2017), the court, in granting summary judgment, held that to the extent the counterclaim-plaintiffs "use their unjust enrichment theory to enforce rights under federal patent law, this federal law preempts the state law claim." *Id.*  The unjust enrichment counterclaim in that case,

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

like the claim here, merely alleged that it was unjust to allow a defendant to "benefit from [a] Patent by selling the machine disclosed in the patent and marking the machine with that number, while refusing to pay royalties to the patent owner." *Id.*; *see also General Elec. Co. v. Wilkins*, 2011 WL 3163348 (C.D. Cal. July 26, 2011) ("The only benefit identified in Defendant's unjust enrichment claim is 'licensing revenue.' To the extent Defendant seeks to obtain a patent-like royalty from Plaintiff based on licensing revenue attributable to the '565 and '985 Patents, Defendant's unjust enrichment claim is preempted."); *Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 982 (Fed. Cir. 2008) (affirming the district court's dismissal of the plaintiff's unjust enrichment claims because "Tavory's allegations only concern NTP's activities regarding the patents-in-suit, and the complaint does not allege any other uses of his [inventions] by NTP.").

In the current case, the substantive conduct alleged in the unjust enrichment claim is the other "conduct alleged in this Complaint" against AGA, which is patent infringement. Accordingly, UEC's unjust enrichment claim against AGA should be dismissed for failure to state a claim and because it is preempted by the Patent Act under the U.S. Constitution's Supremacy Clause.

## 2.     *UEC's Tortious Interference Claim is Preempted.*

Applying these same principles, courts have recognized that "a tortious interference claim is preempted by federal patent law if it is based on the same conduct that is governed by patent law." *CardioVention, Inc.*, 430 F. Supp. 2d at 939; *see also A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 647 (D.N.J. 2000) (observing that to avoid preemption, "state law claims must be based on acts beyond simply patent infringement."); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994) ("infringement of patent rights . . . is not generally recognized as coming within the rubric of 'unfair competition.'").

In *A.K. Stamping*, for example, plaintiff AKS brought a claim for unfair competition and tortious interference with contract and with prospective economic advantage based on the fact

that defendant ISC marketed its allegedly infringing product to third party IBM, which was an AKS customer, and the representations made to IBM constituted tortious interference. 106 F. Supp. 2d at 647-49. The court granted summary judgment on both the unfair competition claims and the tortious interference claims in part because AKS "appear[ed] to not have discovered any facts independent of alleged infringement to support these state law claims," and thus the claims were preempted by federal patent law. *Id.* at 648.

Similarly here, the allegations giving rise to UEC's tortious interference claim are based upon the same conduct as the patent infringement claim. Specifically, UEC alleges that "Despite having knowledge of UEC's prospective relationships, Defendants intentionally interfered with UEC's prospective relationships *by exploiting the Asserted Patents without permission or justification*." Compl. ¶ 101 (emphasis added). While UEC asserts conclusory, bare bones allegations attempting to address the other elements of tortious interference with prospective economic advantage (which are otherwise deficient for the reasons described below), UEC alleges no conduct of Defendants forming the basis of the tortious interference claim other than Defendants allegedly "exploiting the Asserted Patents." Because the conduct forming the basis of UEC's tortious interference claim is identical to the conduct forming the basis of the patent infringement claims, UEC's tortious interference claim is preempted by federal patent law and must be dismissed.[2]

### 3. The Breach of Fiduciary Duty Claim is Preempted

UEC's breach of fiduciary duty claim fails for the same reasons. UEC alleges that "Okada intentionally breached his fiduciary duty to UEC *by allowing and/or directing AGA to infringe patents* owned by UEC." Compl. ¶ 107 (emphasis added). UEC also alleges in the

---

[2] This case is distinguishable from *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294 (Fed. Cir. 1999), in which the court held that patent law did not preempt a tortious interference claim against an infringer for interference with prospective patent licensees. There, the alleged infringer (Seagate) allegedly engaged in specific, affirmative steps to interfere with prospective licenses by telling the prospective licensees not to take a license with the patent holder (Rodime) and arranging meetings with other prospective licensees to question the validity of Rodime's patents. *Id.* at 1299-1300. In contrast, UEC alleges no affirmative interference by AGA. *See infra* Sec. III.F. UEC does not even allege that any prospective licensee was contacted by AGA, or knew that AGA was practicing the patents, or that UEC allowed AGA to do so without payment of a royalty. Thus, UEC's tortious interference claim amounts to an impermissible attempt to provide patent-like protections, and it is preempted.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

breach of fiduciary duty claim that "UEC obtained no benefit whatsoever *from AGA's unauthorized practice of the Asserted Patents*," and that Mr. Okada "profit[ed] from AGA's *knowing and willful infringement of UEC's valuable Asserted Patents*." *Id.* ¶ 110 (emphases added). Because UEC's breach of fiduciary duty claim against Mr. Okada is premised upon AGA's alleged infringement of UEC's patents, the fiduciary duty claim is also preempted under federal patent law. *See, e.g., Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987) (finding unfair competition claim based on breach of fiduciary duty was preempted because it did not add an extra element or otherwise change the nature of the action and was part and parcel of the copyright claim).

### F. UEC's Claim for Tortious Interference With Prospective Economic Advantage Also Fails Because UEC Did Not Identify Any Prospective Contractual Relationship With a Third Party With Which AGA or Mr. Okada Interfered or Any Interference.

UEC's claim for tortious interference with prospective economic advantage should be dismissed for the independent reason that UEC has failed to identify any specific prospective economic relationship with any identified third party, and failed to allege interference by the Defendants. Under Nevada law, to sufficiently plead a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of that prospective relationship; (3) an intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *8 (D. Nev. Nov. 7, 2017) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987)); *see also Wichinsky v. Mosa*, 109 Nev. 84, 847 P.2d 727, 730 (1993) (requiring a prospective contractual relationship existed between the plaintiff and a third party, and that the defendant knew of the relationship).

Courts have routinely held that a plaintiff must identify the particular prospective

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

contractual relationship with a third party with which the defendant interfered to state a claim for interference with prospective economic advantage. *See, e.g., Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *9 (D. Nev. Nov. 7, 2017) (Hicks, J.); *Bio-Med. Research Ltd. v. Thane Int'l, Inc.*, 249 F. App'x 539, 542 (9th Cir. 2007); *Council for Educ. Travel, USA v. Czopek*, No. 1:11-CV-00672, 2011 WL 3882474, at *7 (M.D. Pa. Sept. 2, 2011) (dismissing interference with prospective contractual relations because the plaintiff failed "to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged tortious interference."); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *17 (N.D. Cal. Nov. 11, 2016) (dismissing tortious interference claim where the plaintiff "'solely alleges that it has an economic relationship with 'major consumers of biodiesel,' and does not provide details about 'specific' companies.'"); *Volunteer Firemen's Ins. Servs., Inc. v. Fuller*, No. 1:12-CV-2016, 2012 WL 6681802, at *11 (M.D. Pa. Dec. 21, 2012) (holding that interference with prospective economic advantage claim "requires Plaintiffs to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged tortious interference."); *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (observing that "every state which has addressed the issue has found that the party must establish some evidence that a prospective business relationship is likely to occur," and holding that "plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity").

In *Rimini Street*, for example, Oracle moved to dismiss tortious interference claims on the ground that Rimini Street's claim for interference with prospective economic advantage failed to identify any prospective contractual relationship that was disrupted. 2017 WL 5158658, at *9. The court noted that "nowhere in Rimini Street's third amended complaint has Rimini Street identified a specific relationship or specific prospective customer with which Oracle is alleged to have interfered." *Id.* Having found that Rimini Street "fail[ed] to actually identify any prospective clients," the court ruled that the allegations were insufficient to state a

claim for intentional interference with prospective economic advantage. *Id.* (citing *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at \*10 (N.D. Cal. May 8, 2013)).

Similarly, courts have required more than just a conclusory recitation of the elements of the claim. In *Players Network, Inc. v. Comcast Corp.*, No. 2:14-CV-00238-GMN, 2015 WL 4760629, at \*4 (D. Nev. Aug. 11, 2015), this Court held that a tortious interference claim is "not sufficiently pled" by allegations that "merely recite [claim] elements in conclusory fashion," such as these allegations which are very similar to UEC's allegations in our case:

- "[Plaintiff] had prospective contractual relationships with interested advertisers and sponsors of the Channel and the programming content created and developed for the Channel."

- "Defendants knew, or should have known, of [Plaintiff]'s prospective contractual relationships with interested advertisers and sponsors of the Channel and the programming content created and developed for the Channel."

Like the allegations at issue in *Players Network* and *Rimini Street*, UEC's allegations are conclusory and do not state a claim for tortious interference. UEC does not identify any third party with which UEC had a prospective contract; instead, UEC identifies only "customers and potential customers." Compl. ¶ 100. Nor does UEC identify the prospective contract(s) at issue; rather, UEC identifies only "contracts or relationships . . . with respect to licensing of Asserted Patents." *Id.* ¶ 101. While UEC's allegations suggest that numerous contracts, relationships, customers and potential customers are at issue in its claim, it fails to identify a single one. *See, e.g., Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at \*10 (N.D. Cal. May 8, 2013) (dismissing claim for tortious interference with prospective economic advantage because the plaintiff merely alleged interference with its "employees and customers" but failed to specifically identify any of them).

In addition, the Complaint fails to allege how Defendants intentionally interfered with any such prospective contract. Instead, the Complaint simply repeats its patent infringement claim that Defendants intentionally interfered "by exploiting the Asserted Patents without

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

permission or justification," and vaguely asserts the patents could have been "licensed to others by UEC." *Id.* But there are no facts alleged in the Complaint that make this claim plausible. UEC fails to allege how AGA's or Mr. Okada's purported patent infringement hindered UEC's ability to license the patents to others. Accordingly, the tortious interference claim should be dismissed for failure to state a claim.

## G. The Complaint Fails to Plead the Claim for Fraudulent Misrepresentation With Particularity

UEC's claim for fraudulent misrepresentation should be dismissed because UEC has failed to plead this claim with particularity. To state a claim for fraudulent misrepresentation under Nevada law, the plaintiff must allege facts demonstrating the following elements: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Bulbman Inc. v. Nevada Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992). In addition, "the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such a fact does not exist." *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007) (internal quotation marks omitted). A complaint is "subject to deeper scrutiny when it contains allegations of fraud." *Steffen v. Dmatrix, Inc.*, No. 2:13-CV-00876-JAD, 2014 WL 4417716, at *1 (D. Nev. Sept. 8, 2014).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *see also Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding that the circumstances constituting the

alleged fraud must be "specific enough to give defendants notice of the particular misconduct," which requires allegations regarding the "who, what, when, where, and how of the misconduct charged.").

> This heightened standard serves several purposes, such as:
>
> > (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (citation and alterations omitted)).

Here, UEC has not pleaded its fraudulent misrepresentation claim with particularity as required by Rule 9(b). First, UEC does not identify any "affirmative representations" made by Mr. Okada as alleged in paragraph 115. UEC merely alleges that in March 2009, Mr. Okada instructed Mr. Yaegashi to engage in "what amounted to sham negotiations" and later instructed Mr. Yaegashi to cease negotiations.[3] But neither of these statements amounts to an affirmative misrepresentation of a material fact to the plaintiff. Nor is there particularity regarding specifically when a misrepresentation was made, where Mr. Okada made the misrepresentation, to whom a misrepresentation was made, or how UEC supposedly relied to its detriment upon any material misrepresentation made by Mr. Okada.

Second, UEC's allegations with respect to alleged omissions of Mr. Okada are just as tenuous as those related to alleged affirmative misrepresentations. The sole allegation which provides any detail whatsoever regarding Mr. Okada's claimed omissions merely states that

---

[3] While UEC alleges that the negotiations "amounted to sham negotiations," it does not allege that Mr. Okada instructed Mr. Yaegashi to actually engage in sham negotiations. Moreover, UEC alleges only "[u]pon information and belief" that Mr. Okada instructed Mr. Yaegashi to cease such negotiations. *Id.* ¶ 114. Such allegations are insufficient to support a fraud claim. *See Tallman v. First Nat'l Bank of Nev.*, 66 Nev. 248, 259, 208 P.2d 302, 307 (1949) ("[i]t is not sufficient to charge a fraud upon information and belief…without giving the ground upon which the belief rests or stating some fact from which the court can infer that the belief is well founded."); *Shroyer v. New Cingular Wireless Servs.*, 606 F.3d 658, 661 (9th Cir. 2010) ("Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded.").

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

"Okada failed to disclose the fact that the negotiations had been cancelled . . . ."  Compl. ¶ 114. Later, the Complaint vaguely references "intentional omissions of material facts" and general "omissions," *id.* ¶¶ 115-16, but it provides no further details regarding the substance of the omissions, to whom Mr. Okada should have disclosed, when he should have disclosed, and any other particulars necessary to state a claim.   Given UEC's utter failure to provide any particularity regarding any misrepresentation or omission made by Mr. Okada, the misrepresentation claim fails for lack of particularity and should be dismissed for failure to state a claim upon which relief can be granted.

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss for failure to state a claim Counts One, Two, Three and Four for patent infringement, Count Five for tortious interference with prospective economic advantage, Count Six for breach of fiduciary duty, Count Seven for fraudulent misrepresentation, and Count Eight for unjust enrichment.

DATED this 29th day of May 2018.

By _/s/ J. Stephen Peek, Esq._____
J. Stephen Peek, Esq. (1758)
Bryce K. Kunimoto, Esq. (7781)
Robert J. Cassity, Esq. (9779)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Attorneys for Defendants Aruze Gaming America, Inc. and Kazuo Okada*

Jeffrey S. Love (*pro hac vice* forthcoming)
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204

*Attorneys for Defendant Aruze Gaming America, Inc.*

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May 2018, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS** was served by the following method(s):

☒    Electronic:   by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Jay J. Schuttert, Esq.
David W. Gutke, Esq.
EVANS FEARS & SCHUTTERT LLP
2300 West Sahara Ave Ste 900
Las Vegas, NV 89101
dgutke@efstriallaw.com
fradford@efstriallaw.com
rbennett@efstriallaw.com
jschuttert@efstriallaw.com

Andrew Z. Weaver, Esq.
POLSINELLI PC
1000 Louisiana Street, 53rd Floor
Houston, TX 77002
aweaver@polsinelli.com

*Attorneys for Plaintiff*

                                    /s/ Valerie Larsen
                                    An Employee of Holland & Hart, LLP

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ◆ Fax: (702) 669-4650