J. Stephen Peek, Esq. (1758)
Bryce K. Kunimoto, Esq. (7781)
Robert J. Cassity, Esq. (9779)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
Tel: (702) 669-4600
Fax: (702) 669-4650
speek@hollandhart.com
bkunimoto@hollandhart.com
bcassity@hollandhart.com

*Attorneys for Defendants Aruze Gaming
America, Inc. and Kazuo Okada*

Jeffrey S. Love (*pro hac vice*)
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204
jeffrey.love@klarquist.com

*Attorneys for Defendant Aruze Gaming
America, Inc.*

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNIVERSAL ENTERTAINMENT CORPORATION, a Japanese corporation<br><br>Plaintiff,<br><br>v.<br><br>ARUZE GAMING AMERICA, INC., a Nevada corporation, KAZUO OKADA, an individual<br><br>Defendants. | CASE NO.:  2:18-00585-RFB-GWF<br><br>**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

Defendants Aruze Gaming America, Inc. ("AGA") and Kazuo Okada ("Mr. Okada") (together, "Defendants"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the claims for patent infringement (Counts One, Two, Three and Four), tortious interference with prospective economic advantage (Count Five), breach of fiduciary duty (Count Six), fraudulent

1  misrepresentation (Count Seven), and unjust enrichment (Count Eight) asserted by Universal

2  Entertainment Corporation ("UEC") in its Second Amended Complaint (ECF No. 43) ("SAC").

3         This Motion is supported by the following Memorandum of Points and Authorities, the

4  papers and pleadings on file, and any oral argument the Court may allow.

5         DATED this 6th day of September 2018.

6                                              By  /s/ J. Stephen Peek
                                               J. Stephen Peek, Esq. (1758)
7                                              Bryce K. Kunimoto, Esq. (7781)
                                               Robert J. Cassity, Esq. (9779)
8                                              HOLLAND & HART LLP
                                               9555 Hillwood Drive, 2nd Floor
9                                              Las Vegas, Nevada 89134

10                                             *Attorneys for Defendants Aruze Gaming America,*
                                               *Inc. and Kazuo Okada*
11
                                               Jeffrey S. Love (*pro hac vice*)
12                                             Klarquist Sparkman, LLP
                                               One World Trade Center
13                                             121 S.W. Salmon Street
                                               Suite 1600
14                                             Portland, Oregon 97204

15                                             *Attorneys for Defendant Aruze Gaming America,*
                                               *Inc.*
16

17

18

19

20

21

22

23

24

25

26

27

28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ◆ Fax: (702) 669-4650

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.

### <u>INTRODUCTION</u>

In the approximately five months that this case has been pending, Universal Entertainment Corporation ("UEC") has taken not one, not two, but three attempts at filing a sufficiently-pleaded complaint.  In response, Defendants have filed not one, not two, but now three motions to dismiss, all of which detail the continuing deficiencies in each respective iteration of UEC's complaint. Despite having three bites at the apple, and despite waiting to take each subsequent bite until after Defendants had briefed the previous bite's flaws, UEC's third attempt at pleading viable claims against Defendants again misses the mark.   UEC's actions amount to nothing more than fruitless gamesmanship that have delayed this case, caused Defendants to expend valuable time and resources to continuously re-brief the same issues, and wasted judicial resources in the process.  The simple fact is, UEC has not pleaded and cannot plead sufficient facts to bring claims against Defendants, because those facts do not exist.

UEC was founded by Kazuo Okada in 1969, and for several decades Mr. Okada served as the Chairman of the Board of Directors of UEC and has been largely responsible for the success of the company.  Mr. Okada owns shares in UEC through a company he created, Okada Holdings, Limited ("Okada Holdings"), which in turn owns 67% of the outstanding shares of UEC.  In mid-2017, UEC's President Mr. Jun Fujimoto and some of its directors orchestrated a scheme to oust Mr. Okada from UEC by defrauding Mr. Okada's daughter, without her knowledge, into signing certain documents which had the purported effect of transferring her shares of Okada Holdings into a trust controlled by her brother, and Mr. Okada's son, Tomohiro Okada.  This allowed Tomohiro, through his newly-appointed directors of Okada Holdings, to elect purportedly a slate of directors that eliminated Mr. Okada from the board of directors of UEC.  Seeking to further entrench his position of control over UEC and cause additional harm to Mr. Okada and his companies, Mr. Fujimoto has now caused UEC to assert meritless patent infringement and related tort claims against Aruze Gaming America, Inc. ("AGA") and Mr.

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

Okada in this lawsuit.  As discussed in greater detail below, UEC's SAC fails to state a claim upon which relief can be granted, and the Court should dismiss UEC's claims for at least the following four reasons:

*First*, the Court should dismiss the patent infringement claims (Counts One through Four) because UEC alleges facts showing that UEC's officers in charge of its U.S. business and patent portfolio authorized AGA to make the Accused Products and to freely use UEC's patents.  Specifically, UEC alleges that AGA's actions were authorized by Mr. Okada, UEC's founder, chairman of the board from 2006 to 2017, and officer in charge of UEC's foreign business (including the United States), and by Mr. Yaegashi, General Manager of UEC's Patent Department from 2002 to 2013.   In light of these admissions, the patent infringement claims necessarily fail.

Alternatively, the Court should dismiss the contributory patent claims (in Counts One, Two, Three and Four) because UEC fails to specifically allege that either Defendant "offers to sell or sells … or imports … a component of a patented machine …, constituting a material part of the invention, knowing the same to be especially made … for use in an infringement of such patent, and not … suitable for substantial noninfringing use…."  35 U.S.C. § 271(c).  For example, UEC fails to identify any specific component, allege that any such component is a material part of the invention, or allege that AGA offers to sell, sells, or imports any such component knowing it is especially made for use in an infringement, and it pleads only conclusory allegations that any such component is "not … suitable for substantial noninfringing use."  Accordingly, Counts One, Two, Three and Four fail to state a claim for contributory patent infringement under 35 U.S.C. § 271(c).  In addition, the Court should dismiss Counts One and Two, which assert patents reissued in 2017 with all claims amended, based on statutory intervening rights under 35 U.S.C. § 252.

*Second*, the Court should dismiss UEC's claims for unjust enrichment (Count Eight), tortious interference with prospective economic advantage (Count Five), and breach of fiduciary duty (Count Six) because these claims are based solely on the alleged patent infringement, and

(a) UEC authorized AGA's alleged conduct so it is not infringement, and (b) tort claims based only on patent infringement are preempted by federal patent law  because the conduct giving rise to the unjust enrichment, tortious interference, and breach of fiduciary duty claims is based on the same conduct that gives rise to the federal patent infringement claims.

*Third*, UEC's claim for tortious interference with prospective economic advantage (Count Five) as to Mr. Okada should be dismissed for failure to state a claim for the independent reason that Mr. Okada cannot tortiously interfere with any prospective agreements to which he is not a third-party "stranger." UEC specifically alleges Mr. Okada is AGA's controlling shareholder and was at all relevant times an officer and director of UEC.  Moreover, UEC's tortious interference claim against AGA should also be dismissed for failure to state a claim because, although UEC identifies three gaming entities with which it alleges it had prospective agreements, UEC does not allege how AGA knew about these prospective agreements or how AGA accomplished this alleged interference.

Additionally, UEC's claim for tortious interference should be dismissed as to AGA because UEC makes only a few vague allegations tying AGA to any prospective business relationships or agreements.  And, those vague allegations do not state an actionable claim for tortious interference.

*Finally*, UEC's fraudulent misrepresentation claim (Count Seven) fails because UEC did not plead fraud with particularity as required under Rule 9(b).  Specifically, UEC failed to identify any specific affirmative representation by Mr. Okada, when and where Mr. Okada made the misrepresentation, to whom he made the representation, how any such representation was false, or how UEC relied upon any such misrepresentation.  And the sole allegation regarding omission of material facts likewise provides scant detail woefully insufficient to support a fraudulent misrepresentation or omission claim.

///

///

///

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

## II.

## SUMMARY OF FACTUAL ALLEGATIONS[1]

### A.    Background

Universal Entertainment Corporation ("UEC") is a Japanese corporation publicly traded on the Tokyo Stock Exchange JASDAQ.  SAC ¶ 1.  Mr. Okada was the founder of UEC and served as Representative Director (equivalent to CEO) from June 1972 to September 2004, and from January 2006 until June 2017 served as a director and chairman of the Board of Directors of UEC.  *Id.* ¶ 50.

In 2005, AGA manufactured gaming devices for sale outside of Japan and was entirely owned by UEC, operating as a consolidated subsidiary of UEC.  *Id.* ¶ 57.  In August 2008, Mr. Okada purchased shares of AGA from UEC and UEC issued additional AGA stock to Mr. Okada, resulting in UEC holding 49.95% of AGA's stock and Mr. Okada holding the remaining 50.05%.  *Id.* ¶ 58.  In December 2008, Mr. Okada agreed to purchase the remaining stock of AGA owned by UEC, and the transfer of these shares to Mr. Okada was completed in March 2010.  *Id.* ¶ 59.

### B.    The Asserted Patents

UEC alleges that it is the owner of certain patents, namely, U.S. Reissue Patent No. 46,472 ("the `472 patent"), U.S. Reissue Patent No. 46,473 ("the `473 patent"), U.S. Patent No. 8,088,013 ("the `013 patent") and U.S. Patent No. 8,246,047 ("the `047 patent") (collectively, the "Asserted Patents"), which relate to slot machine type gaming devices and certain aspects of their construction and operation.  SAC ¶ 11.  The `472 patent and the `473 patent issued on July 11, 2017.  *Id.* ¶¶ 12, 14.  The `013 patent issued on January 3, 2012.  *Id.* ¶ 16. The `047 patent issued on August 21, 2012.  *Id.* ¶ 18.  UEC alleges that certain products sold by AGA (the "Accused Products") infringe one or more claims of the Asserted Patents.  *Id.* ¶ 48.

///

///

---

[1] Defendants vigorously dispute the factual allegations set forth in UEC's SAC.  Nevertheless, Defendants are presenting the factual allegations as they are pleaded in the SAC for purposes of the instant motion.

### C.   Mr. Okada, UEC's Officer, Director, and Chairman, And Mr. Yaegashi, UEC's GM of Patents, Authorized AGA's Sale of the Accused Products.

UEC alleges that Mr. Okada, UEC's director and Chairman of the Board of Directors, directed AGA employees in the State of Nevada in their activities that resulted in the infringement by AGA of UEC's patents. SAC ¶ 4.  "In approximately July 2010, … Okada, who was the Chairman of the Board of Directors, was placed in charge of UEC's foreign business (including the United States)." *Id.* ¶ 53.  "The decision in July 2010 of placing … Okada in charge of UEC's foreign operations of UEC (including the United States) . . . also led to a division of UEC's Patent Department into domestic (within Japan) and foreign (including the United States) sections, with each section reporting to Fujimoto and Okada, respectively…" *Id.* ¶ 54.  UEC alleges that Okada "directly controlled the UEC Patent Department." *Id.* ¶ 63.

UEC alleges that Mr. Nobuo Yaegashi was General Manager of UEC's Patent Department from March 2002 to March 2013.  *Id.* ¶ 55.  Yaegashi reported to Mr. Okada and took direct instructions from Mr. Okada throughout this time.  *Id.*  UEC alleges that Mr. Okada "positioned himself to direct, control or influence UEC's Patent Department through Yaegashi, the General Manager of UEC's Patent Department, who reported to Okada and took direction from Okada throughout this period of time."  *Id.* ¶ 62.  Mr. Okada later "instructed Yaegashi to cease all discussions relating to the execution of a license agreement between UEC and AGA. Okada further, upon information and belief, instructed Yaegashi not to seek compensation from AGA for the use of any of UEC's patents." *Id.* ¶ 64.  Yaegashi followed both directives from Mr. Okada.  *Id.*  UEC further alleges that "Okada directed employees of AGA located in Nevada to develop and produce the Accused Products, which made use of the technology claimed in the Asserted Patents." *Id.* ¶ 70.

In its SAC, UEC alleges for the first time that none of its *officers*, *directors*, managers, or employees authorized AGA to practice any of its Asserted Patents.  *Id.* ¶ 61.  However, UEC also alleges, in contradictory fashion, that Mr. Okada, UEC's founder, *officer*, and *director*,

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

1    authorized and instructed Mr. Yaegashi, the General Manager of UEC's Patent Department, to
2    authorize AGA to practice UEC's patent rights.  *See id.* ¶¶ 55, 62-64, 74-75.

3        **D.    Allegations Regarding UEC's Claims for Relief**

4        UEC asserts four patent infringement claims against AGA; claims for tortious
5    interference with prospective business advantage and unjust enrichment against AGA and Mr.
6    Okada; and breach of fiduciary duty and fraudulent misrepresentation claims against Mr.
7    Okada.

8        With regard to the patent infringement claims, as discussed above, UEC alleges that Mr.
9    Okada, UEC's director and Chairman of the Board, authorized AGA's use of the Asserted
10   Patents.  UEC's SAC does not allege that AGA "offers to sell or sells" infringing component
11   parts, "constituting a material part of the invention, knowing the [component] to be especially
12   made . . . for use in an infringement of such patent … [with no] substantial noninfringing
13   use…."  *See* 35 U.S.C. § 271(c).

14       UEC alleges that Mr. Okada had knowledge of potential license agreements between
15   UEC and AGA.  *Id.* ¶ 102.  Separately, UEC amended it allegations to limit the specific third
16   parties with which AGA allegedly interfered, stating that AGA "had knowledge of potential
17   agreement [sic] between UEC and other game manufacturers, such as without limitation
18   International Game Technology, Inc., who is part of a patent cross-licensing agreement that
19   related to at least some of UEC's Patent Rights, including the Asserted Patents."  *Id.*  UEC
20   further amended its allegations to state that "Defendants intentionally interfered with UEC's
21   prospective relationships by ***at least*** exploiting the Asserted Patents without permission or
22   justification."  *Id.* ¶ 103 (emphasis added to show new language).  UEC amended its allegations
23   to state that upon information and belief "Defendants also took affirmative action to dissuade
24   third parties from entering into agreements with UEC."  *Id.* ¶ 104.

25       UEC's unjust enrichment claim alleges that AGA and Mr. Okada improperly received
26   monies or other benefits "[b]y engaging in the conduct alleged in this Complaint."  *Id.* ¶ 124.
27   The conduct alleged in the SAC by which AGA and Mr. Okada allegedly improperly received
28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

monies and other benefits concerns the benefits derived from the alleged infringement of UEC's Asserted Patents.

With regard to the breach of fiduciary claim, UEC alleges that Mr. Okada owed a fiduciary duty of loyalty to UEC as an officer and director. *Id.* ¶ 108. UEC alleges that Mr. Okada breached his fiduciary duty to UEC "by allowing and/or directing AGA to infringe patents owned by UEC" and by not disclosing "the infringing actions of AGA" and by failing to protect the Asserted Patents from AGA's alleged infringement. *Id.* ¶ 109.

Finally, in support of its fraudulent misrepresentation claim, UEC alleges that beginning in March 2009, Mr. Okada "instructed Yaegashi to engage in what amounted to sham negotiations between UEC and AGA" for an agreement "to license those UEC patent rights to AGA that were necessary for AGA to continue manufacturing gaming devices." *Id.* ¶¶ 62-63, 116. UEC does not allege that Mr. Okada (or anyone) would have bought AGA without a license to UEC patents "necessary" to continue AGA's business and does not allege that UEC ever proposed in license negotiations any payment beyond the purchase of AGA. UEC alleges that Mr. Okada "instructed Yaegashi to cease such negotiations" after Mr. Okada had acquired the shares of AGA from UEC, but that Mr. Okada failed to disclose to others at UEC that the negotiations were terminated, thereby allowing AGA to exploit UEC's Asserted Patents. *Id.* ¶ 116.

### III.

### LEGAL ARGUMENT

This is UEC's third attempt to file a complaint that states a claim upon which relief may be granted. Once again, UEC fails to state a claim. Given the delays and expenses incurred by UEC's pleading practices along with the abject futility of those practices, UEC should not be given leave to try again. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (The "liberality" in granting leave to amend a complaint does not apply when the amendment is sought in "bad faith" or constitutes "an exercise in futility.").

///

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

**A.      Legal Standard**

Rule 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**B.      The SAC Fails To State A Claim For Patent Infringement Because UEC Alleges That It Authorized AGA's Actions**

The patent infringement claims (Counts 1-4) fail to state a claim because the SAC alleges facts which show that UEC authorized AGA's actions.  To state a claim for patent infringement, a complaint must allege facts showing that the defendant acted "without authority" of the patent owner. 35 U.S.C. § 271(a).  But as described in detail above, the SAC alleges facts showing that UEC's officers in charge of its U.S. business and patent portfolio

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

authorized AGA to make the Accused Products and to freely use UEC's patents.  SAC ¶¶ 3, 4, 50, 54-56, 62-64, 70, 74-75.  Specifically, the SAC alleges that AGA's actions with respect to the use of UEC's Asserted Patents were expressly authorized by Mr. Okada, UEC's founder, chairman of the board from 2006 to 2017, and officer in charge of UEC's foreign business (including the United States), and by Mr. Yaegashi, General Manager of UEC's Patent Department from 2002 to 2013.  *Id.*  UEC new allegation—stating that no one at UEC authorized AGA to practice UEC's patents, *id.* ¶ 61—is conclusory, and stands in direct contravention of the remainder of its more specific allegations, which spell out how Mr. Okada and Mr. Yaegashi authorized AGA to use UEC's patents.

In sum, UEC cannot have it both ways.  It cannot allege, in support of its tort claims, that Mr. Okada and Mr. Yaegashi authorized AGA's use of the Asserted Patents, and also allege, in support of its patent infringement claims, that those same officers did not authorize AGA's use of the Asserted Patents.  UEC's patent claims are fundamentally flawed, because UEC is essentially trying to sue AGA over alleged authorizations by UEC's own officer, director, and patent manager.  Such allegations do not state a claim against AGA.

UEC's specific allegations that its officers authorized AGA's actions are not undermined by the SAC's conclusory allegation that AGA acted "without authority," or that *other* UEC officers, such as Mr. Fujimoto, were allegedly out of the loop (*e.g.*, SAC ¶¶ 54-56, 64-65, 70-72).  *Everybody* at UEC does not have to authorize AGA's actions.  The pertinent question is whether the SAC alleges that *anyone* at UEC with authority to do so authorized AGA's actions.  The SAC alleges that the two UEC senior officers most directly responsible for its U.S. business and patents authorized AGA's actions.  And, it alleges that such authorization started during time periods in 2005-2010 when AGA was initially a wholly-owned and then a partially-owned subsidiary of UEC.  SAC ¶¶ 55, 57-59.  There is nothing unusual about a parent corporation authorizing its subsidiary to practice its patents royalty-free.  UEC fails to allege anything unusual about that here and fails to allege any facts undermining the authority of UEC's Chairman, and UEC's GM of patents, to authorize AGA to do exactly that.

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ◆ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 • Fax: (702) 669-4650

Though UEC alleges that Mr. Okada "never obtained approval from the UEC Board of Directors to grant any type of royalty-free license to AGA," UEC does not allege facts showing that Mr. Okada needed such approval.  It also does not allege that Mr. Yaegashi lacked authority.  The SAC shows that Mr. Yaegashi also knew of, acquiesced in, and authorized AGA's alleged actions.  *See* SAC ¶¶ 62-64, 66.

UEC alleges that AGA was UEC's subsidiary from 2005 to 2010, and manufactured gaming devices for sale outside of Japan.  SAC ¶¶ 57-59.  UEC does not argue that its Board Chairman and head of foreign business lacked authority during 2005 to 2010 to authorize its subsidiary to practice its patents.  Such licenses are commonplace and common sense between corporate affiliates.  And when a subsidiary is sold as a going concern, the sale naturally includes such licenses.  UEC does not allege that its Board was unaware of, or objected to, its subsidiary's alleged use of its gaming patents in 2005-2010, or the sale of AGA.

UEC alleges that it sold all of its shares in AGA to Mr. Okada in 2010.  SAC ¶ 59.  The SAC makes plain that AGA, after it was sold, continued to manufacture gaming machines.  It was sold as a going concern.  UEC does not allege that the Board did not know that, or that the sale lacked Board approval.  The sale of AGA included AGA's license to use UEC's patents, which it obtained while a UEC subsidiary.  UEC does not allege otherwise.

UEC's specific allegations that its officers orally authorized AGA's actions are not undermined by UEC's other allegations that it did not provide AGA with a written patent license and did not require a royalty.  SAC ¶¶ 61-66.  "Licenses may be oral."  *Enzo APA & Son v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358, 1364 (Fed. Cir. 2003).  And licenses may be royalty-free.  *See, e.g., Imation Corp. v. Koninklijke Philips Electronics N.V.*, 586 F.3d 980, 986 (Fed. Cir. 2009) (enforcing "royalty-free license"). The SAC alleges that UEC's Board Chairman, and its head of patents, knew of, acquiesced in, and encouraged AGA's alleged use of UEC's patents.  SAC ¶¶ 50, 54-56, 62-66.  That's a license, oral and implied.  *See De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).

AGA's actions do not infringe UEC's patents because the SAC plainly alleges that AGA's actions were authorized by UEC's officers in charge of its U.S. business and patents. Accordingly, the SAC fails to state a claim of patent infringement.

### C.    The Contributory Patent Infringement Claims Fail Because They Do Not Allege The Sale of a Material Component of a Patented Machine

The patent infringement claims (Counts 1-4) also fail to state a claim for contributory infringement.

Contributory patent infringement has precise statutory requirements.  It requires that one "offers to sell or sells … or imports … a component of a patented machine …, constituting a material part of the invention, knowing the same to be especially made … for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use…."  35 U.S.C. § 271(c).

Under *Twombly* and *Iqbal*, to state a claim for contributory infringement, a complaint's factual allegations must specifically identify such a component.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."); *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 488 (1964) ("§ 271(c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."); *Global-Tech v. SEB S.A.*, 563 U.S. 754, 763–64 (2011) (same).

The SAC's contributory infringement counts do not meet that standard.  Count One is exemplary.  Its contributory infringement allegations state:

> Further, on information and belief, AGA has contributed to and/or induced, and is contributing to and/or inducing, the infringement of the claims of the '472 patent (for example, claims 1, 6, 10 and 18).  On information and belief, the direct infringement contributed to by AGA includes at least the operation by gaming establishments, and their customers, of the G-ENEX family of slot machine games. On information and belief, AGA, with knowledge and without authorization, **provides** the G-ENEX

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

family of **slot machine games as a unit** and/**or as one or more components** including replacement parts or to be assembled. The G-ENEX family of slot machines are dedicated slot machine games, with one or more components being specifically adapted, shaped and/or fitted, including at least the components described in ¶¶ 77-78, for such slot machine games, which infringe claims of the `472 patent. [Etc.]

SAC ¶ 80 (emphasis added).

The allegations in paragraph 79 do not identify any specific "component" of a patented machine that AGA "offers to sell or sells … or imports." Rather, they allege that AGA "provides … slot machine games as a unit … or as one or more components." That fails to squarely allege that AGA sells (versus "provides") the games as either "a unit … or … components," and it fails to allege that "provides" any specific component. Rather, it essentially alleges that AGA either does or does not "provide" components. Such equivocation fails to state a claim for contributory infringement. Moreover, UEC's other allegations are merely conclusory.

Accordingly, UEC's contributory infringement claims should be dismissed. *See, e.g.*, *BioCell Tech. LLC v. Arthro-7*, No. SACV1200516JVSRNBX, 2012 WL 12892937, at *9 (C.D. Cal. Nov. 19, 2012) (dismissing claim for contributory infringement when item identified in complaint embodies entire alleged infringement, not a mere component). Counts Two, Three and Four have nearly identical, boilerplate contributory infringement allegations. They also fail to identify any specific "component" that AGA sells or imports, and they allege all elements in merely conclusory and equivocal terms. *See* SAC ¶¶ 85, 91, 100. Accordingly, they also fail to state a claim for contributory patent infringement.

Accordingly, the contributory infringement claims in paragraphs 80, 85, 91, 100 of Counts One, Two, Three and Four should be dismissed for failure to state a claim.

**D.    Patent Infringement Counts One and Two Assert Patents Reissued In 2017, And Fail Due To AGA's Intervening Rights Under 35 U.S.C. § 252.**

The '472 and '473 patents asserted in Counts One and Two were reissued on July 11, 2017, and copies of those patents are set forth in SAC Exhibits A and B. SAC ¶¶ 12, 14. In the SAC, the reissued claims were all newly added or substantively amended by direct amendment

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

or by being dependent on a directly amended claim (or both).  *See* SAC Exs. A and B (showing amended claim terms as italicized (added) or bracketed (deleted)).

The SAC alleges infringement of "at least claim 1 of the '472 patent."  SAC ¶ 77.  All three of that patent's original independent claims (1, 6, 10) were substantively amended, with multiple claim elements added or deleted.  *See* SAC Ex. A Cols. 9:54-10:34, 10:58-11:44, 11:61-12:46.   All claims dependent on claims 1, 6 and 10 incorporate that substantive amendment.  For example, the "controller" element was deleted from each of those independent claims, and also, by incorporation, from all the claims dependent on any of claim 1, 6 or 10 (claims 2-5, 7-9, and 11-17).  *See* SAC Ex. A Cols. 9-13.  In addition, one independent claim (18) was newly added, along with three new claims dependent on claim 18 (claims 19, 20 and 21).  *See* SAC Ex. A Cols. 13:7-14.  Without question, intervening rights apply to claims in which an element has been deleted, and to new claims.

The SAC alleges infringement of "at least claims 1 and 14 of the '473 patent."  SAC ¶ 82.  Claim 14 is a new claim added during reissue, as shown in SAC Exhibit B (the reissue patent italicizes those claims, showing that they were newly added).

Claim 1 was also amended.  The term "operation table" was added to each independent claim in claims 1-13 (claims 1, 6 and 10), and thereby incorporated into each dependent claim, The Court may take judicial notice of the Patent Office records of these reissue proceedings, which show that claims 1-13 of the '473 patent were amended to overcome the patent examiner's determination that they were indefinite and so unpatentable, as shown in these excerpts from the Patent Office reissue records of the examiner's rejection dated September 21, 2016 (at page 4), and the patent owner's response ("arguments/remarks made in an amendment) dated December 19, 2016 (at page 13), which are publicly available at https://portal.uspto.gov/pair/PublicPair:

Examiner's rejection:

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

Application/Control Number: 14/962,087                                       Page 4
Art Unit: 3993

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 1-13 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which the inventor or a joint inventor, or for pre-AIA the

applicant regards as the invention.

In claim 1, line 16, claim 6, line 17, and claim 10, line 15, it is unclear whether the

clause "which extends along the width direction of the front door" refers to the cutout

portion, the periphery, or the operation table.

Claims 3, 4, 7, 8, 11 and 12 recite once again that the cutout portion is formed at

a front and towards a periphery of the table, raising issues of double inclusion.  Further,

it is unclear which structure has the same width as the front door.

Patent owner's response:

2.      Claims 1 – 13 stand rejected under 35 USC 112, second paragraph, on grounds that it was
unclear whether the clause "which extends along the width direction of the door" in claims 1, 6
and 10 referred to the cutout portion, the periphery, or the operation table.  Applicant has
amended such claims to recite, "which <u>operation table</u> extends along the width direction of the
front door" for clarity, thereby obviating the rejection.

Claims 3, 4, 7, 8, 11 and 12 were rejected under similar provisions because it was unclear
which structure has the same width as the front door and that such claims raised issues of double
inclusion.   Applicant has amended such claims to recite "<u>which operation table</u> has substantially
the same width as the front door," to thereby obviate the rejection.

UEC, in its August 16, 2018 Opposition to Defendants' Motion to Dismiss First Amended

Complaint, conceded that the amendment was made "[i]n response to a rejection under 35

U.S.C. § 112, ¶ 2 for being unclear" (ECF No. 40, p. 15), and did not dispute that, in

prosecuting the patent, it amended the claims in response to the indefiniteness rejection shown

above.  Amendments to overcome unpatentability rejections are almost always substantive.  *See*

*The Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) ("it is difficult to

conceive of many situations in which the scope of a rejected claim that became allowable when

amended is not substantively changed by the amendment").

Accordingly, AGA has a statutory right to continue the use of, to offer to sell, and to sell to others to be used, offered for sale, or sold, the accused gaming machines that AGA made, purchased, offered to sell, or used within the United States, or imported into the United States, prior to the grant of these reissue patents on July 11, 2017, because none of the asserted claims in the reissue patents was in the original patent.  *See* 35 U.S.C. § 252 (second paragraph):

> A reissued patent shall not abridge or affect the right of any person … who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. …

UEC's claims should be dismissed to the extent they accuse gaming machines that predate the 2017 reissue of these patents.  *See Waters Technologies Corp. v. Aurora SFC Systems, Inc.,* Civil Action No. 11–708–RGA, 2017 WL 3598648 *3 (D. Del. 2017) ("Plaintiff has failed to state a claim under 12(b)(6), but only with respect to allegations of infringement prior to October 14, 2016….  Allegations of infringement from October 14, 2016 onwards that violate Defendants' absolute intervening rights are also dismissed.").

Because UEC does not allege that any accused games were first made, imported or sold only *after* these two asserted patents were reissued in July 2017, these claims should be dismissed in their entirety for failure to state a claim.

> **E.**	**The Claims for Intentional Interference with Prospective Economic Advantage, Unjust Enrichment and Breach of Fiduciary Duty Fail Because UEC Authorized AGA's Alleged Use Of The Patents, And Because the Claims are Preempted Under Federal Patent Law.**

Counts 5, 6 and 8 are all tort claims premised on AGA's alleged patent infringement. Because, as shown above, the SAC alleges that UEC's officers authorized AGA's alleged use of the patents, there is no patent infringement, and those tort claims fail to state a claim for relief.

In addition, those tort claims are preempted because they allege nothing beyond patent

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

infringement.   The United States Constitution grants Congress the power to "promote the progress of science and the useful arts by securing for a limited time" the rights of inventors. U.S. Const. art. I, § 8, cl. 8. Under this authority, Congress passed the federal Patent Act, 35 U.S.C. §§ 1-376 (2000). Pursuant to the Supremacy Clause (U.S. Const. art. VI, cl. 2), federal law may preempt state law by three methods: explicit preemption, field preemption, and conflict preemption. *Hunter Douglas v. Harmonic Design, Inc.*, 153 F.3d 1318, 1333 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999); *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990).

Federal Circuit law applies to the issue of whether federal patent law preempts a state law claim. *Ultra–Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).   Federal patent law only preempts state law claims through "conflict" preemption. *See id.* at 1377.   Such "conflict" preemption may occur in one of two ways.   First, state law will be preempted by federal law "where it is impossible for a private party to comply with both state and federal requirements."  *English*, 496 U.S. at 79; *see also Hunter Douglas*, 153 F.3d at 1335 (considering per se conflict preemption as discussed in *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987)).   Second, state law will be preempted by federal law "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *English*, 496 U.S. at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).   The Federal Circuit has adopted a conduct-based approach to this second kind of conflict preemption.  *See CardioVention, Inc. v. Medtronic, Inc.*, 430 F.Supp.2d 933, 939 (D. Minn. 2006). Thus, "[i]n determining whether the state law claim is in conflict with federal patent law, the Court takes an 'as-applied' approach, focusing on the conduct that forms the basis for the tort law claim. If the conduct at issue in the state tort claim is protected or governed by federal patent law, the tort action is preempted." *Id.*  To this end, where a party's state law claims are based solely upon allegations of patent infringement, those claims are preempted because their prosecution under state law would undermine the purposes and objectives of the federal patent system.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

Because UEC's tort claims in Counts 5, 6 and 8 are based solely upon allegations of patent infringement, they are preempted by federal patent law.

### 1. UEC's Unjust Enrichment Claim is Preempted

UEC's claim for unjust enrichment relies entirely on UEC's patent infringement allegations against AGA and Mr. Okada. Specifically, UEC's unjust enrichment claim alleges only that "*[b]y engaging in the conduct alleged in this Complaint*, Defendants have improperly received monies or other benefits and compensation that unjustly enriched them at UEC's expense." SAC ¶ 124 (emphasis added). Accordingly, UEC's unjust enrichment claim is preempted and must be dismissed.

When state law conflicts with patent law, the state law is preempted by the Supremacy Clause of the U.S. Constitution and has no effect. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989); *see also Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 982 (Fed. Cir. 2008) ("An unjust enrichment claim is preempted by federal patent law when it conflicts with 'the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting *Ultra-Precision Mfg., Ltd.*, 411 F. 3d at 1377). Whether a claim for unjust enrichment involving a patent is preempted by federal patent law depends on whether the claim as pled accuses the defendant of obtaining an incremental benefit beyond those attributable to the patent or its infringement. *Ultra-Precision Mfg., Ltd.*, 411 F.3d at 1379–82. "In the absence of an incremental benefit conferred, any attempt to obtain a patent-like royalty for the making, using or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Id.* at 1382. The reason is that "state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights." *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003). Accordingly, courts have repeatedly held that claims similar to the unjust enrichment claim in this case are preempted by federal patent law and must be dismissed.

For example, in *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. CIV.A. 3:08-CV-00302, 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009), the court held that "the third

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

count of the complaint, unjust enrichment, is completely preempted as it simply incorporates the two counts of patent infringement by reference and asserts that these also constitute unjust enrichment on the part of the defendants."  Similarly, in *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at \*2 (E.D. Tex. Aug. 11, 2015), the court held that because the claim alleged only that Apple received "the benefit of the use of the patented invention," the relief requested would result in a "patent-like royalty," and thus the unjust enrichment claim "is preempted by the Patent Act and must be dismissed."  The unjust enrichment claim in that case, as here, alleged nothing more than "unjust" enrichment by practicing certain patents without paying a royalty.  *See id.* (alleging that Apple benefited from "patented contributions," but "refused to negotiate a FRAND royalty . . .").

Further, in *Neonatal Product Group, Inc. v. Shields*, 276 F. Supp. 3d 1120, 1151 (D. Kan. 2017), the court, in granting summary judgment, held that to the extent the counterclaim-plaintiffs "use their unjust enrichment theory to enforce rights under federal patent law, this federal law preempts the state law claim." *Id.*  The unjust enrichment counterclaim in that case, like the claim here, merely alleged that it was unjust to allow a defendant to "benefit from [a] Patent by selling the machine disclosed in the patent and marking the machine with that number, while refusing to pay royalties to the patent owner."  *Id.*[2]

In the current case, the substantive conduct alleged in the unjust enrichment claim is the other "conduct alleged in this Complaint" against AGA, which is patent infringement. Accordingly, UEC's unjust enrichment claim against AGA should be dismissed for failure to state a claim and because it is preempted by the Patent Act.

### 2.    *UEC's Tortious Interference Claim is Preempted.*

Applying these same principles, courts have recognized that "a tortious interference

---

[2]*See also General Elec. Co. v. Wilkins*, 2011 WL 3163348 (C.D. Cal. July 26, 2011) ("The only benefit identified in Defendant's unjust enrichment claim is 'licensing revenue.' To the extent Defendant seeks to obtain a patent-like royalty from Plaintiff based on licensing revenue attributable to the '565 and '985 Patents, Defendant's unjust enrichment claim is preempted."); *Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 982 (Fed. Cir. 2008) (affirming the district court's dismissal of the plaintiff's unjust enrichment claims because "Tavory's allegations only concern NTP's activities regarding the patents-in-suit, and the complaint does not allege any other uses of his [inventions] by NTP.").

claim is preempted by federal patent law if it is based on the same conduct that is governed by patent law." *CardioVention, Inc.*, 430 F. Supp. 2d at 939; *see also A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 647 (D.N.J. 2000) (observing that to avoid preemption, "state law claims must be based on acts beyond simply patent infringement."); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994) ("infringement of patent rights . . . is not generally recognized as coming within the rubric of 'unfair competition.'").

In *A.K. Stamping*, for example, plaintiff AKS brought a claim for unfair competition and tortious interference with contract and with prospective economic advantage based on the fact that defendant ISC marketed its allegedly infringing product to third party IBM, which was an AKS customer, and the representations made to IBM constituted tortious interference. 106 F. Supp. 2d at 647-49. The court granted summary judgment on both the unfair competition claims and the tortious interference claims in part because AKS "appear[ed] to not have discovered any facts independent of alleged infringement to support these state law claims," and thus the claims were preempted by federal patent law. *Id.* at 648.

Similarly, here, the allegations giving rise to UEC's tortious interference claim are based upon the same conduct as the patent infringement claim. Specifically, UEC alleges that "Despite having knowledge of UEC's prospective relationships, Defendants intentionally interfered with UEC's prospective relationships *by at least exploiting the Asserted Patents without permission or justification*." SAC ¶ 103 (emphasis added). UEC's addition of the phrase "at least" in the SAC does not so drastically modify the allegation to state a claim alleging anything beyond mere patent infringement except in the most academic sense.

Additionally, while UEC asserts conclusory, bare bones allegations attempting to address the other elements of tortious interference with prospective economic advantage (which are otherwise deficient for the reasons described below), UEC does not actually allege any conduct of Defendants forming the basis of the tortious interference claim other than Defendants allegedly "exploiting the Asserted Patents." Though tortious interference requires a

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

showing of intent and patent infringement does not, because "the Court takes an 'as-applied' approach, focusing on *the conduct that forms the basis for the tort law claim*" and not necessarily the elements of each claim when determining whether a state law claim is in conflict with federal patent law, a plaintiff's tortious interference claim *as pled* will be preempted by federal patent law where the only allegation concerning that extra element is "protected or governed by federal patent law." *CardioVention*, 430 F. Supp. 2d at 939; *see also Hunter Douglas*, 153 F.3d at 1335.   Because the conduct forming the basis of UEC's tortious interference claim is identical to the conduct forming the basis of the patent infringement claims, UEC's tortious interference claim is preempted by federal patent law and must be dismissed.

### 3.     The Breach of Fiduciary Duty Claim is Preempted

UEC's breach of fiduciary duty claim fails for the same reasons.   UEC alleges that "Okada intentionally breached his fiduciary duty to UEC *by allowing and/or directing AGA to infringe patents* owned by UEC." SAC ¶ 109 (emphasis added).   UEC also alleges in the breach of fiduciary duty claim that "UEC obtained no benefit whatsoever *from AGA's unauthorized practice of the Asserted Patents*," and that Mr. Okada "profit[ed] from AGA's *knowing and willful infringement of UEC's valuable Asserted Patents*." *Id.* ¶ 112 (emphases added).   Because UEC's breach of fiduciary duty claim against Mr. Okada is premised upon AGA's alleged infringement of UEC's patents, the fiduciary duty claim is also preempted under federal patent law. *See, e.g., Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987) (finding unfair competition claim based on breach of fiduciary duty was preempted because it did not add an extra element or otherwise change the nature of the action and was part and parcel of the copyright claim).

### F.     UEC's Claim for Tortious Interference With Prospective Economic Advantage Also Fails To State Claim Against Either Mr. Okada or AGA.

UEC's claim for tortious interference with prospective economic advantage should be dismissed for several reasons independent of preemption.

First, Mr. Okada cannot tortiously interfere with prospective contracts to which he is

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

not a third-party "stranger." "In Nevada, a party cannot, as a matter of law, tortiously interfere with his own contract." *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (citation omitted). The Ninth Circuit has likewise recognized that "the core of intentional interference business torts is interference with an economic relationship *by a third-party stranger to that relationship*, so that an entity with *a direct interest or involvement in that relationship* is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 828, 832 (9th Cir. 2001) (dismissing interference claim "[b]ecause the economic relationship between the [plaintiff] and the [third party] depends on [the defendant's] cooperation.") (emphasis added).[3] The basic legal principle that only a stranger to a business relationship or contract can tortiously interfere with that relationship or contract has wide support in Nevada and throughout state courts across the country. *See Corrigan Mgmt., Inc. v. Golden Tavern Group, LLC*, No. A-09-599655-B, 2012 WL 314558 (Nev. Dist. Ct. June 15, 2012) ("Where a defendant has a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract.") (quoting 44B Am. Jur. 2d Interference § 7)).[4]

Here, UEC alleges that Mr. Okada was a controlling shareholder (or sole shareholder) of AGA (SAC ¶ 58), that he directed AGA employees in the sale of infringing gaming machines (*Id.* ¶ 3), and that Mr. Okada was an officer and director of UEC (*Id.* ¶ 108) at the time of the alleged interference in "exploiting the Asserted Patents without permission or justification." *Id.* ¶ 103. Therefore, as a matter of law, Mr. Okada was not a stranger to any prospective contractual relationship between UEC and AGA, but rather had a direct interest or involvement in the entities' relationship, and the intentional interference claim against Mr. Okada must be

---

[3] Though *Marin Tug* interpreted a California state court decision— *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994)—that has since been called into question by California courts, *see Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1126-27 (9th Cir. 2014), this development in California state law has no effect on Nevada's tortious interference jurisprudence.

[4] *See also Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1094 (Fla. App. 2009); *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 884 (Del. Ch. 2009); *Ashby v. ALM Media, LLC*, 973 N.Y.S.2d 109, 110 (N.Y. App. Div. 2013); *Kvenild v. Taylor*, 594 P.2d 972, 977 (Wyo. 1979); *Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.*, 126 A.3d 959, 979–80 (Pa. Super. Ct. 2015).

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

dismissed.   Moreover, UEC fails to allege how Mr. Okada *plausibly* intentionally interfered with UEC's prospective contract with AGA by "exploiting the Asserted Patents" when UEC is careful to allege elsewhere in its SAC that it was AGA that infringed its Asserted Patents, *not* Mr. Okada.   *See id.* at ¶¶ 77, 82, 87, 93. The claim against Mr. Okada should be dismissed. *Weil v. Express Container Corp.*, 824 A.2d 174, 183 (N.J. Ct. App. 2003).

Second, concerning UEC's allegations that AGA interfered with UEC's prospective agreements with other game manufacturers, UEC fails to allege facts that demonstrate AGA intended to harm UEC by any of its alleged actions, knew of the specific prospective agreements UEC identifies, or how AGA accomplished any alleged interference.   Under Nevada law, to sufficiently plead a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of that prospective relationship; (3) an intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *8 (D. Nev. Nov. 7, 2017).

While UEC alleges the identity of a single entity with which UEC supposedly had a prospective contractual relationship (SAC ¶ 102), UEC fails to allege any facts demonstrating how AGA had knowledge of UEC's interactions with this named (and other as-yet unidentified)[5] prospective contractual relationships.   UEC also fails to allege specific facts which demonstrate that AGA intended to harm UEC by any of its alleged actions.   *Consol. Generator-Nev, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1255 (1998) (requiring proof of "intent to harm the plaintiff by preventing [a prospective contractual] relationship.").

In addition, the SAC fails to allege how AGA or Mr. Okada intentionally interfered with

---

[5] UEC fails to identify any other prospective contractual relationships with which Defendants allegedly interfered. *See* SAC ¶ 102.   UEC's interference claim should be dismissed as to any prospective contracts with any unidentified third-parties. *See, e.g., Rimini St., Inc.*, 2017 WL 5158658 at *9.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

any specific prospective contract.  Instead, the SAC simply repeats its patent infringement claim that Defendants intentionally interfered "by at least exploiting the Asserted Patents without permission or justification."  SAC ¶ 103.  But there are no facts alleged in the SAC that make this claim plausible.  UEC now alleges that Defendants "took affirmative action to dissuade third parties from entering into agreements with UEC" to bolster its allegations in its SAC.  *Id.* ¶ 104.  However, UEC says nothing about what "affirmative action" which Defendant—AGA or Mr. Okada—took to interfere and, as in its original complaint, does not identify the "third parties" that Defendants allegedly dissuaded.  These deficiencies undermine any claim for relief UEC attempts to make out for tortious interference on their own.  Accordingly, the tortious interference claim should be dismissed for failure to state a claim.

### G.    The SAC Fails to Plead the Claim for Fraudulent Misrepresentation With Particularity

UEC's claim for fraudulent misrepresentation should be dismissed because UEC has failed to plead this claim with particularity.  To state a claim for fraudulent misrepresentation under Nevada law, the plaintiff must allege facts demonstrating the following elements: (1) A false representation made by the defendant;  (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation;  (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation;  and (4) damage to the plaintiff as a result of relying on the misrepresentation.  *Bulbman Inc. v. Nevada Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992).  In addition, "the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such a fact does not exist."  *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007) (internal quotation marks omitted).  A complaint is "subject to deeper scrutiny when it contains allegations of fraud."  *Steffen v. Dmatrix, Inc.*, No. 2:13-CV-00876-JAD, 2014 WL 4417716, at *1 (D. Nev. Sept. 8, 2014).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Ninth Circuit has "interpreted Rule 9(b)

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ◆ Fax: (702) 669-4650

to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *see also Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding that circumstances constituting alleged fraud must be "specific enough to give defendants notice of the particular misconduct," which requires allegations regarding the "who, what, when, where, and how of the misconduct charged.").

Here, UEC has not pled its fraudulent misrepresentation claim with particularity as required by Rule 9(b). First, UEC does not identify any "affirmative representations" made by Mr. Okada as alleged in paragraph 117. UEC merely alleges that, in March 2009, Mr. Okada instructed Mr. Yaegashi to engage in "what amounted to sham negotiations"—though UEC does not allege that these were, in fact, "sham negotiations"—and later instructed Mr. Yaegashi to cease negotiations.[6] But neither of these statements amounts to an affirmative misrepresentation of a material fact to UEC. Nor is there particularity regarding specifically when a misrepresentation was made, where Mr. Okada made the misrepresentation, to whom a misrepresentation was made, or how UEC supposedly relied to its detriment upon any material misrepresentation made by Mr. Okada.

Second, UEC's allegations with respect to alleged omissions of Mr. Okada are just as tenuous as those related to alleged affirmative misrepresentations. The sole allegation which provides any detail whatsoever regarding Mr. Okada's claimed omissions merely states that "Okada failed to disclose the fact that the negotiations had been cancelled . . . ." SAC ¶ 116. Later, the SAC vaguely references "intentional omissions of material facts" and general "omissions," *id.* ¶¶ 117-118, but it provides no further details regarding the substance of the omissions, to whom Mr. Okada should have disclosed, when he should have disclosed, and any

---

[6] UEC alleges only "[u]pon information and belief" that Mr. Okada instructed Mr. Yaegashi to cease such negotiations. Such allegations are insufficient to support a fraud claim. *See Tallman v. First Nat'l Bank of Nev.*, 66 Nev. 248, 259, 208 P.2d 302, 307 (1949); *Shroyer v. New Cingular Wireless Servs.*, 606 F.3d 658, 661 (9th Cir. 2010) ("Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded.").

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650

other particulars necessary to state a claim.    Given UEC's utter failure to provide any particularity regarding any misrepresentation or omission made by Mr. Okada, the misrepresentation claim fails for lack of particularity and should be dismissed for failure to state a claim upon which relief can be granted.

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss for failure to state a claim Counts One, Two, Three and Four for patent infringement, Count Five for tortious interference with prospective economic advantage, Count Six for breach of fiduciary duty, Count Seven for fraudulent misrepresentation, and Count Eight for unjust enrichment.

DATED this 6th day of September 2018.

By  /s/ J. Stephen Peek
J. Stephen Peek, Esq. (1758)
Bryce K. Kunimoto, Esq. (7781)
Robert J. Cassity, Esq. (9779)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Attorneys for Defendants Aruze Gaming America, Inc. and Kazuo Okada*

Jeffrey S. Love (*pro hac vice* forthcoming)
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204

*Attorneys for Defendant Aruze Gaming America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September 2018, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** was served by the following method(s):

☒   Electronic:   by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Jay J. Schuttert, Esq.
David W. Gutke, Esq.
EVANS FEARS & SCHUTTERT LLP
2300 West Sahara Ave Ste 900
Las Vegas, NV 89101
dgutke@efstriallaw.com
fradford@efstriallaw.com
rbennett@efstriallaw.com
jschuttert@efstriallaw.com

Andrew Z. Weaver, Esq.
POLSINELLI PC
1000 Louisiana Street, 53rd Floor
Houston, TX 77002
aweaver@polsinelli.com

*Attorneys for Plaintiff*

　　　　　　　　　　　 /s/ Valerie Larsen
　　　　　　　　　　　An Employee of Holland & Hart, LLP

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2500 ♦ Fax: (702) 669-4650