UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Universal Entertainment Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Aruze Gaming America, Inc. et al.,<br><br>Defendants. | Case No. 2:18-cv-00585-RFB-NJK<br><br>ORDER |

## I.   INTRODUCTION

Before the Court are Defendants Aruze Gaming America, Inc. ("AGA") and Kazuo Okada's Motions for Temporary Restraining Order (ECF No. 119) and Preliminary Injunction (ECF No. 120). The motions are denied.

## II.   PROCEDURAL BACKGROUND

Plaintiff Universal Entertainment Corporation ("UEC") sued AGA and Okada on March 20, 2018. ECF No. 1. AGA and Okada moved to dismiss the complaint on May 29, 2018. ECF No. 13. The Court granted leave to file an amended complaint on July 16, 2018. ECF No. 25. UEC filed the First Amended Complaint on July 19, 2018. ECF No. 29. AGA and Okada moved to dismiss the First Amended Complaint. ECF No. 33. UEC then filed the Second Amended Complaint on August 23, 2018. ECF No. 43. The Second Amended Complaint is the operative complaint in this action.

AGA and Okada moved to dismiss the complaint on September 6, 2018. ECF No. 44. UEC opposed, and AGA and Okada replied. ECF Nos. 49, 53. This motion remains pending before the Court after a hearing held on May 29, 2019. ECF No. 89.

On September 20, 2018, AGA and Okada also answered the complaint, asserting eighteen counterclaims. ECF No. 50. They amended the answer on October 11, 2018. ECF No. 58. In the Amended Answer, AGA and Okada assert counterclaims against UEC, Aruze USA, Inc., and Jun Fujimoto.

UEC moved to dismiss the counterclaims. ECF No. 59. AGA and Okada opposed, and UEC replied. ECF Nos. 64, 68. Fujimoto also moved to dismiss the counterclaims. ECF No. 60. AGA and Okada opposed, and Fujimoto replied. ECF Nos. 63, 67. These motions remain pending before the Court after the hearing on May 29, 2019. ECF No. 89.

The parties engaged in a settlement conference on March 5, 2019, but no settlement was reached. ECF No. 78. On May 24, 2019, Defendant and Counter Claimant AGA filed a Motion for Summary Judgment. ECF No. 86. UEC responded on June 28, 2019, AGA replied on July 19, 2019. ECF Nos. 97, 99. This motion remains pending before the Court.

On October 29, 2019, UEC filed a Notice of Related Case referencing a case filed in this district involving the same parties and asserting patent infringement claims involving similar products at issue in this matter. ECF No. 117. That case is not currently before this Court.

On November 15, 2019, AGA and Okada filed the instant motions. ECF Nos. 119, 120. UEC responded on November 22, 2019 and AGA and Okada replied on November 27, 2019. ECF Nos. 126, 127.

### III. FACTUAL BACKGROUND

The facts at issue in the underlying dispute are substantial. For purposes of deciding the instant motions, the Court limits its factual discussion to those facts upon which the instant motions are based.

The primary dispute at the center of this action is an allegation by UEC against AGA of four counts of patent infringement of its slot machines, as asserted in UEC's complaint. ECF No. 43 at 3-38. In the operative complaint, UEC alleges, *inter alia*, infringement of four patents by AGA's G-ENEX slot machine cabinets, as well as certain AGA gaming machines. Id. In response, Defendants have asserted a number of counterclaims against UEC, including breach of patent

license agreement (Count Ten), Sham Patent Litigation (Count Twelve), Declaratory Judgment as to Patent Rights (Count 15), and Breach of Contract (Count 17). ECF No. 58 at 64-79. The assertion underlying these counterclaims is that AGA has an implied and oral license with a right to sublicense to UEC patents "existing, conceived, or claiming priority to applications existing on March 31, 2009, when UEC completed its sale of AGA to Okada." ECF No. 120 at 11.

Defendants assert in the instant motion that UEC has filed and initiated additional patent suits in foreign jurisdictions against Defendants and their affiliates. ECF No. 120 at 5. Specifically, Defendants assert that UEC previously initiated criminal proceedings against Okada and AGA in the Philippines in November 2017 alleging fraud, id. at 10, and in April 2018 "encourage[ed]" the Hong Kong Independent Commission Against Corruption to criminally prosecute Okada by providing documents and submitting a statement alleging corruption, id. at 12. The current motions specifically concern UEC's filing of a criminal complaint in Macau for patent infringement against Aruze Gaming Macau Limited ("AGML"), id. at 2, 12, a subsidiary of Aruze Gaming HK, which is an affiliate of AGA, id. at 7 n.4. This criminal complaint was filed on or about July 10, 2018. ECF No. 126 at 2.

Defendants explain through an affidavit filed by counsel for AGML that in Macau, a private entity may file either a civil or criminal complaint for patent infringement and "may request to be appointed as an assistant to the criminal proceedings and, in that capacity . . . may provide its collaboration in the investigation, as well as request that investigative measures and further means of evidence be produced and/or collected." Ex. A at 2, ECF No. 121. The Public Prosecutor, "directly or with the assistance of the police authority . . . must investigate the complaint." Id. It is ultimately the Public Prosecutor's decision whether to bring an indictment after investigation, but if "sufficient evidence exists" to suggest that a crime may have been committed, the Prosecutor "must" pursue charges. Id. at 3. Until an indictment is issued or a trial hearing is scheduled, the investigation and pre-trial proceedings are required to remain secret. Id. at 4.

Defendants state that on June 5, 2019, Macau Customs officials[1] removed AGML's

---

[1] According to counsel for AGML, Macau Customs is "entrusted with police authority and has the competence to investigate criminal offenses related to intellectual property matters . . . ."

- 3 -

gaming machine inventory of approximately eight gaming machines of the G-ENEX and CUBE-X G-series cabinets at issue in this case. ECF No. 120 at 13-14. Defendants assert "upon information and belief" that this seizure was the consequence of the criminal complaint asserting patent infringement by AGML filed by UEC with the Macau Customs authorities. Id. at 14. UEC has cooperated with the Macanese authorities in this criminal investigation. ECF No. 126 at 2.

These actions by UEC are consistent with a press release it issued on May 14, 2018, in which it stated it would file criminal complaints and civil lawsuits against AGA and Okada "on the grounds that its patent rights and other rights were violated" in the United States, Macau, the Philippines, and Hong Kong. ECF No. 120 at 12 (citing Ex. CC at 175-76, ECF No. 123).

## IV. LEGAL STANDARD

### A. Anti-Suit Injunction

"'A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be used sparingly.'" Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 881 (9th Cir. 2012) (quoting E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 989 (9th Cir. 2006)). "Courts derive the ability to enter an anti-suit injunction from their equitable powers. Such injunctions allow the court to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust." Gallo, 446 F.3d at 989. "The suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions." Id. at 990. "To the extent the traditional preliminary injunction test is appropriate, . . . [courts] only need address whether [the injunction seeker] showed a significant likelihood of success on the merits. The merits in this case, however, are . . . about . . . whether [the injunction seeker] has demonstrated that the factors specific to an anti-suit injunction weigh in favor of granting that injunction here." Id. at 990-91 (adopting Fifth Circuit approach establishing that a modified analysis for anti-suit injunctions applies rather than the usual test for preliminary injunctions) (internal quotations and citation omitted).

---

Ex. A at 2, ECF No. 121.

- 4 -

Whether a court should issue an anti-suit injunction is determined by the consideration of three factors. Microsoft Corp., 696 F.3d at 881. First, a court must determine "whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." Id. (internal quotations and citation omitted). Second, the court must determine "whether at least one of the so-called '*Unterweser* factors' applies." Id. (citation omitted). Finally, a court must "assess whether the injunction's impact on comity is tolerable." Id.

The *Unterweser* factors "are a disjunctive list of considerations that may justify a foreign anti-suit injunction . . . ." Id. at 881-82. They are: "[whether the] foreign litigation . . . would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." Id. at 882 (quoting Gallo, 446 F. 3d at 990).

### V.     DISCUSSION

Defendants request that the Court enjoin UEC and affiliates within its control from further voluntary cooperation with Macanese authorities in the criminal investigation and prosecution of AGML, and of other AGA and Okada affiliates, over the alleged infringement of UEC patents within the scope of AGA's alleged license. ECF No. 120 at 2. With regard to the Macanese investigation, Defendants also request that the Court enjoin UEC from asserting that AGA has no rights to UEC patents without also disclosing Defendants' pending counterclaims alleging AGA has a license and sublicense to UEC's patents in the underlying suit before this Court. Id. at 2-3. Defendants also move the Court to enjoin UEC from initiating or encouraging additional foreign government authorities to criminally prosecute Okada, AGA, or any of their affiliates on issues relating to the right to use patents within the scope of AGA's alleged license, pending resolution of the underlying counterclaims. Id. at 3.

Employing the three-part test elucidated by the Ninth Circuit in Microsoft Corp., the Court first considers whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined.

Defendants argue that both the parties and issues are functionally the same in both this and

the Macau action. With regard to the parties, Defendants assert that "functionally UEC is a party" to the Macau action because the Public Prosecutor in investigating the criminal complaint filed by UEC and potentially filing charges and trying the case, with the potential assistance of UEC, will "indirectly represent UEC's interests in pursuing the[] criminal charges, as any relief obtained would benefit UEC." ECF No. 120 at 15-16. UEC counters that the Public Prosecutor is not the functional equivalent of UEC and that Defendants have proffered no evidence that AGML and AGA "share the type of affiliation . . . that courts have recognized would satisfy [the] identity requirement." ECF No. 126 at 7-8. Specifically, UEC argues that the Macau action is not a civil action in which UEC sought "to protect its own civil patent rights," id. at 6-7, and the private entity who files the criminal complaint "is not a party to the criminal investigation and has no control or authority of the investigation nor decision to indict" though it may be asked to or may request to assist, id. at 7. Regarding the relationship between AGML and AGA, UEC asserts that Defendants have not shown that any adverse consequences of the Macau action on AGML would extend to AGA. Id. at 8.

In reply, Defendants note that the declaration and organizational chart attached to their motion "outlining the close affiliation between Defendants and AGML" provides evidence in support of common ownership and shared business practices and assets, and therefore evidence that Defendants and AGML are functionally the same. ECF No. 127 at 5 (citing Exs. N, FF, ECF No. 120). With regard to UEC, Defendants assert in reply that UEC's admission that it initiated the criminal complaint and the fact that Macau procedure permits the private entity to voluntarily assist in the criminal investigation, leads Defendants to "believe that UEC has continued to voluntarily and gratuitously insert itself further into the Macau proceedings by requesting to be made an assistant to the Macanese Authorities." Id. at 6. This conduct is consistent with "a role that is functionally similar to an active litigant," thereby warranting an injunction. Id. at 6.

The Court finds that Defendants have not satisfied this initial hurdle of the first factor in the Microsoft Corp. test because they have failed to show that the parties are the same, in either the Macau action or any future foreign criminal proceedings. Microsoft Corp. itself considered facts very similar to those at issue here, with one crucial exception. In that case, the Ninth Circuit

considered an interlocutory appeal of the district court's foreign anti-suit injunction. Microsoft filed a breach of contract suit against Motorola, arguing that Motorola had breached its contractual obligation to license standard-essential patents to the International Telecommunications Union and Institute of Electrical and Electronics Engineers with terms that are "reasonable and nondiscriminatory." 696 F.3d at 876-78. Microsoft was a third-party beneficiary to the contract. Id. Months after the civil litigation began, Motorola sued Microsoft in a German court, alleging patent infringement. Id. at 879. That German court found that Microsoft did not have a license to use Motorola's patents and that Microsoft did not have third-party contractual rights based on German law. Id. The court enjoined Microsoft from using the patents in Germany. Id. Because the German injunction was not self-enforcing, Microsoft sought an order in the U.S. civil action to enjoin Motorola from enforcing German injunctive relief. Id. The district court granted the injunction, and the Ninth Circuit agreed with the lower court's reasoning that the U.S. contract dispute would be dispositive of the German patent action because the patents at issue in that action were included in the proposed worldwide license to Motorola's standard-essential patents at issue in the contract dispute. Id. at 880, 883.

Importantly, in Microsoft Corp., all agreed on the threshold issue that the *parties* were the same in both the German and U.S. actions. Id. at 883. Here, the fact that the Macau action is a *criminal*, rather than *civil* proceeding, and therefore invokes the power of the Macanese government itself, makes plain the vital distinction between these two cases, and the necessity for a divergent result. The Macanese Public Prosecutor is not the functional equivalent of UEC, though the procedures of that country permit UEC to voluntarily assist in the investigation. The Public Prosecutor, not UEC, will ultimately make the decision as to whether there is evidence sufficient to suggest a crime has been committed, and therefore that an indictment is warranted. Defendants ask this Court to enjoin UEC from that continued voluntary cooperation, if indeed it is engaged in that conduct, and not to enjoin the criminal proceeding itself. The Court appreciates the distinction but is unwilling to exercise its equitable powers to enjoin UEC from participation in a Macanese criminal proceeding that is governed by Macanese procedural rules and led by Macanese authorities, to determine whether there has been a violation of Macanese criminal law.

Moreover, even assuming, *arguendo*, that Defendants were able to satisfy the first and second Microsoft Corp. factors, they would not satisfy the third. The Court finds in the instant case that the impact of such an injunction on international comity would not be "tolerable." Defendants request that the Court enjoin UEC from "initiating or encouraging additional foreign government authorities to criminally prosecute Mr. Okada, AGA or any of their affiliates" on issues concerning the patents at issue in this action. ECF No. 120 at 3. However, the criminal patent infringement complaint process of Macau clearly allows for initiation of a criminal investigation by a non-governmental entity. Yet, this non-governmental entity does not ultimately direct the investigation or decide whether criminal charges may be brought. This is to say that it is not essentially a civil proceeding whose prosecution or litigation is directed by third parties. As the determination of how a country's criminal laws should be investigated and enforced represents one of the most important characteristics of sovereign authority, this Court will not intervene in an essentially criminal proceeding of another country. While Defendants move the Court to enjoin the initiation or encouragement itself, and not the resulting criminal prosecutions, the Court finds that enjoining such conduct would have an intolerable impact on the criminal proceeding and thus international comity. Foreign governments have the right to enforce their criminal laws and to investigate credible allegations of violations. Whether they choose to do so, once allegations have been made, is in accordance with the application of their laws to the facts at hand. UEC may make allegations against Defendants, but that in itself does not necessarily result in criminal investigation and prosecution. Defendants essentially ask this Court to enjoin UEC from alerting foreign governments to potential violations of their criminal laws. Whether those allegations are credible enough to warrant investigation is a decision to be made by the foreign government. The Court declines to intrude upon this sovereign discretion.

As the Court finds that Defendants have not established that the parties are the same in both this action and the Macau action, and will not be the same in any future foreign criminal actions, Defendants have failed to meet the initial hurdle of the first factor of the Microsoft Corp. test, and the Court does not consider the parties' remaining arguments.

//

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Aruze Gaming America, Inc. and Kazuo Okada's Motion for Temporary Restraining Order (ECF No. 119) and Motion for Preliminary Injunction (ECF No. 120) are **DENIED**.

Good cause appearing, **IT IS FURTHER ORDERED** that Defendants Aruze Gaming America, Inc. and Kazuo Okada's Motion for Leave to File Under Seal Application for Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 118) in accordance with Rule 5.2(d) of the Federal Rules of Civil Procedure is **GRANTED,** *nunc pro tunc*.

DATED: March 16, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**