# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNIVERSAL ENTERTAINMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ARUZE GAMING AMERICA, INC., et al.,<br><br>Defendants. | Case No.: 2:18-cv-00585-RFB-NJK<br><br>**ORDER**<br><br>(Docket Nos. 134, 141)[1] |

Pending before the Court is Defendants' motion to modify the protective order. Docket No. 134; *see also* Docket No. 38 (protective order). The Court has considered Defendants' motion, Plaintiff's response, and Defendants' reply. Docket Nos. 134, 140, 144. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons stated below, the motion is **GRANTED** in part.

**I.    BACKGROUND**

This case arises out of alleged patent infringement, tortious interference, breach of fiduciary duty of loyalty, and fraud. Docket No. 43 at 20–38. As of the parties' instant filings, five collateral cases are ongoing: one in this District, two in Japan, and one each in Macau and the Philippines. Docket No. 134 at 5–8. The collateral case in this District arises out of only alleged patent infringement. *See Universal Ent. Corp. v. Aruze Gaming America, Inc., et al.*, 2:19-cv-01657-GMN-DJA, Docket No. 1 at 35–50. The Japan cases out of a report by Plaintiff's Special Investigation Committee (SIC) about "potentially fraudulent acts" by Defendant Okada. Docket Nos. 134 at 7, 136-4 at 3. Finally, the Macau and Philippines cases are criminal in nature regarding alleged patent infringement and fraud, respectively. Docket No. 134 at 6–7.

---

[1] These filings are the same motion. Docket No. 134 is sealed. The Court found, however, that sealing the entire motion was improper and ordered Defendants to re-file a redacted version. Docket No. 139. Docket No. 141 is the redacted version. From here on, the Court will cite only to Docket No. 134 when referring to Defendants' motion to modify the protective order; however, this order also fully applies to Docket No. 141.

On August 13, 2018, the parties filed a stipulated confidentiality agreement and protective order, which the Court granted the next day. Docket Nos. 36, 38. Defendants now move to modify the protective order to allow "sharing of relevant [confidential and highly confidential information] with affiliates" in the collateral cases. Docket No. 134 at 9. Specifically, Defendants request to modify the protective order in these four ways:

- Amend ¶8 to include the double-underlined language below.

  **8. Use of Confidential Information or Highly Confidential Information.** Except as provided herein, Confidential Information and Highly Confidential Information designated or marked as provided herein shall be used solely for the purposes of this action <u>and domestic and foreign actions involving either (i) the same or functionally similar parties; or (ii) the same or functionally similar issues ("Related Actions")</u>, shall not be disclosed to anyone other than those persons identified herein in Sections <s>11</s><u>10</u> and <s>12,</s><u>11</u>, and shall be handled in such manner until such designation is removed by the designating party or by order of the Court. Nothing in this Protective Order shall preclude a party or other person from using his, her, or its own Confidential Information or Highly Confidential Information or from giving others his, her, or its Confidential Information or Highly Confidential Information <u>or from disclosing to third parties a document that he or she was involved in preparing or had previously reviewed</u>.

- Add the term "functionally similar parties," defined as "UEC (or any of its current or former subsidiaries, affiliates, employees or agents [excluding AGA and Mr. Okada], Aruze USA (or any of its current or former subsidiaries, affiliates, employees, or agents [excluding Mr. Okada]), or Jun Fujimoto (or any of his agents), . . . AGA (or any of its current or former subsidiaries, affiliates, employees, or agents)[,] or Kazuo Okada (or any of his agents) . . . ."

- Add the term "functionally similar issues," defined as "any issues, claims, allegations, or defenses described in UEC's operative Complaint, AGA and/or Mr. Okada's operative Answer, AGA and/or Mr. Okada's operative Counterclaim, and/or any operative reply to AGA and and/or Mr. Okada's operative Counterclaim."

- Amend ¶¶10 and 11 to "clarify that the persons authorized to receive Confidential Information and Highly Confidential Information produced in this litigation include persons involved in the Related Actions, as defined above."

*Id.*

Defendants submit that their proposed amendments are appropriate because the protected discovery in this case is relevant to the five collateral cases and should thus be shared therein. Docket No. 134 at 11–13. Plaintiff, in response, submits the opposite—except as to the case in this District.[2] Docket No. 140 at 3, 5–9.

**II.   ANALYSIS**

For good cause, Courts may issue protective orders that require "that a trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a specified way." Fed.R.Civ.P. 26(c)(1)(G). Courts may also, for good cause, modify protective orders. *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (noting that Courts have broad discretion to modify protective orders) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

The Ninth Circuit "strongly favors access to discovery materials to meet" parties' needs in collateral litigation. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (citation omitted). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* (citation omitted). "Whe[n] reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant materials should generally be granted." *Id.* at 1132 (citation omitted). Courts, however, should not automatically grant a request for modification. *See id.*

As an initial matter, to request that the fruits of one case be shared with litigants in another, a party must have standing to do so. *See Jordan v. United States*, 2017 WL 2230008, at *3 (S.D. Cal. May 22, 2017) (citing *Foltz*, 331 F.3d at 1131). "[T]he collateral litigants"—"not the original litigants"—have standing to make such a request. *Id.* (citing *Foltz*, 331 F.3d at 1131).

---

[2] Plaintiff submits that it "is amenable to negotiating a stipulation [] that relevant protected discovery produced in this case may be deemed produced in [Plaintiff's] subsequent Nevada action between the same parties," *Universal Ent. Corp. v. Aruze Gaming America, Inc., et al.*, 2:19-cv-01657-GMN-DJA. Docket No. 140 at 3.

Defendants request that protected discovery in this case be shared in the five collateral cases with the same or "functionally similar parties," meaning:

> UEC (or any of its current or former subsidiaries, affiliates, employees or agents [excluding AGA and Mr. Okada], Aruze USA (or any of its current or former subsidiaries, affiliates, employees, or agents [excluding Mr. Okada]), or Jun Fujimoto (or any of his agents), . . . AGA (or any of its current or former subsidiaries, affiliates, employees, or agents)[,] or Kazuo Okada (or any of his agents) . . . .

Docket No. 134 at 9. However, Defendants have standing to make that request only on their own behalf—not for their current or former subsidiaries, affiliates, employees, or agents (all of whom are unnamed), or even for other parties in this case. If those parties want access to protected discovery in this case, they will need to intervene and seek access. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474–75 (9th Cir. 1992). Thus, the Court will deny Defendants' request to modify the protective order to share protected discovery with any parties other than Defendants.

The question then becomes whether Defendants are litigants in the collateral cases. Based on the parties' instant filings, Defendant Aruze Gaming America, Inc. is a party in the collateral case in this District and Defendant Okada is a party in all of the collateral cases except the Macau one. *See* Docket Nos. 134 at 6–7, 140 at 3–4. Therefore, Defendants have standing to seek to modify the protective order only for the identified collateral cases in this District, the Philippines, and Japan.

The Court will now turn to the merits of Defendants' request. The Court, however, will not discuss the merits as to the case in this District, because Plaintiff has stated that it is "amenable" to agreeing "that relevant discovery produced in this case may be deemed produced" therein, *see* Docket No. 140 at 3. The Court will therefore allow the parties to make such agreement.

The Ninth Circuit has set out a two-part test to analyze motions to modify protective orders. *Foltz*, 331 F.3d at 1132–34.[3] First, the movant must show "the relevance of the protected discovery

---

[3] Although Defendants are not collateral litigants in the same sense as the parties in *Foltz*— Defendants are parties in this case **and** the Philippines and Japan cases—the Court finds the *Foltz* test applicable here. *See, e.g.*, *Cummins-Allison Corp. v. SBM Co.*, 2013 WL 12250448, at *2 (D. Haw. Nov. 8, 2013).

4

to the collateral proceedings and its general discoverability therein." *Foltz*, 331 F.3d at 1132–34. Second, the Court must weigh the "reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1132. The Court will discuss these parts in turn.

### A. Relevance

The Court must determine whether the protected discovery in this case is relevant enough to the Philippines and Japan cases that "a substantial amount of discovery will be avoided by modifying the protective order." *Id*. That determination depends "on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Id.* The determination need only be a "rough estimate;" the Court will not "embroil itself in the specific disputes applicable only to the collateral [cases] by deciding whether [Defendants] will actually obtain the [protected discovery]." *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2017 WL 6027005, at *3 (S.D. Cal. Dec. 5, 2017) (citing *Foltz*, 331 F.3d at 1133).

#### 1. The Philippines Case

Defendants submit that the protected discovery is relevant to the Philippines case because it "allege[s] a misuse of authority by [Defendant] Okada as the controlling shareholder in Okada Holding[s], as found by the SIC Report and thereafter relied upon in this action." Docket No. 134 at 11. In response, Plaintiff submits that the Philippines case is criminal in nature and "involves different parties—e.g., the Philippines courts—and different issues—e.g., charges of fraud that occurred in the Philippines—unrelated" to this case. Docket No. 140 at 7. In reply, Defendants submit that (1) the Philippines case "concerns claims by . . . a subsidiary of . . . [Defendant] Okada" and (2) the issues are "substantially related" because the complaint in the Philippines case "alleges abuses of authority by [Defendant] Okada" and those allegations "form the basis of claims in this action as well." Docket No. 144 at 6.

The Court is not convinced that substantial discovery would be avoided by modifying the protective order for the Philippines case. Defendants fail to discuss how modifying the protective order for the Philippines case would avoid substantial discovery. Moreover, aside from stating that the Philippines case and this case both have allegations of abuses of authority by Defendant Okada, Defendants fail to discuss any overlap of facts and issues between the cases. Further, it is

5

unclear to the Court whether the protected discovery is relevant at all to the Philippines case considering that the last movement in that case that the Court is aware of is that, after the case was closed, a motion to vacate the resolution or for reconsideration was filed. *See* Docket No. 134 at 72–73. In sum, the Court finds that Defendants have failed to meet their burden to show that the protected discovery is relevant to the Philippines case. Therefore, the Court will deny Defendants' request to modify the protective order to allow the use of the protected discovery in the Philippines case.

### 2. The Japan Cases

Defendants submit that the protected discovery is relevant to the Japan cases because they "assert claims concerning the veracity of the statements and allegations contained within the SIC report." *Id.* at 12. In response, Plaintiff submits that "Defendants do not identify any relevant statements in the SIC, nor do Defendants request permission to share any specific key documents." Docket No. 140 at 8–9 (citation and internal quotation marks omitted). Plaintiff further submits that the Japan cases "involve statements made [in the SIC report] in Japan, not the U.S. patents at issue" in this case. *Id.* at 9. In reply, Defendants submit that this case "involves more than just U.S. patents" and that "the same parties adverse in this action are adverse in [the Japan cases] regarding the veracity of [] statements and allegations contained [in] the SIC Report." Docket No. 144 at 7.

The Court finds that Defendants have demonstrated that the protected discovery is relevant to the Japan cases. Defendants and Plaintiff are parties in the Japan cases, the claims arise from the SIC report, and the claims concern the accuracy of the SIC report. Further, Defendants need not identify specific documents they want to share. *See, e.g.*, *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2017 WL 6027005, at *2–4. By the Court's rough estimate, the protected discovery is relevant enough to the Japan cases that a substantial amount of discovery could be avoided therein by modifying the protective order.

### B. Reliance Interest

If a movant shows that protected discovery is relevant to collateral proceedings, the Court must then weigh the "reliance interest of the party opposing modification against the policy of

6

avoiding duplicative discovery." *Foltz*, 331 F.3d at 1132. A party's reliance interest is diminished "with a blanket [protective] order, because it is by nature overinclusive." *Id.* at 1133 (citation and internal quotation marks omitted). In fact, "reliance on a blanket protective order . . . , without more, will not justify a refusal to modify." *Id.*

The protective order in this case covers any confidential or highly confidential information, so designated by the parties in good faith, upon reasonable belief that the information "contains non-public, confidential information as defined" by the protective order. Docket No. 38 at 2. In other words, the parties are not required under the protective order to first make a "good cause" showing under Fed.R.Civ.P. 26(c) before deeming information confidential or highly confidential. *Cf. Foltz*, 331 F.3d at 1133. Therefore, Plaintiff's reliance interest is diminished. Moreover, Plaintiff's "reliance interest is further diminished [because, aside from Plaintiff, Defendants are] the only 'collateral litigant[s]' expected to have access to the confidential materials in the [Japan cases]." *See Cummins-Allison Corp.*, 2013 WL 12250448, at *3.

As Defendants and Plaintiff are the only parties that would have access to the protected discovery in the Japan cases, Plaintiff "cannot legitimately raise concerns about disclosure to unknown collateral litigants." *Id.* Nor can Plaintiff "reasonably contend that [Defendants] should have access in this litigation, but not in the [Japan cases] involving these same parties, particularly given the relatedness of the cases." *Id.* Defendants' "obligation to maintain confidence [remains] in any action, so it is unclear why access would be permissible here, but not [Japan]." *Id.* For these reasons, the Court will grant Defendants' request to modify the protective order to allow the use of the protected discovery in the Japan cases.

## III.   CONCLUSION

Accordingly, the Court **GRANTS** in part Defendants' motion to modify the protective order only as allowing the use of the protected discovery in the Japan cases. Docket Nos. 134, 141. No later than May 29, 2020, the parties must filed a stipulated and revised protective order that permits relevant protected discovery in this case to be used in (1) the collateral case in this District, *Universal Ent. Corp. v. Aruze Gaming America, Inc., et al.*, 2:19-cv-01657-GMN-DJA, and (2) the Japan cases.

The Court expresses no opinion as to whether Defendants will ultimately obtain the relevant discovery from this case in any collateral cases. Instead, discoverability of any materials covered by the protective order must be resolved by the court in which discovery is sought. *See Foltz*, 331 F.3d at 1133.

IT IS SO ORDERED.

Dated: May 8, 2020

_____
Nancy J. Koppe
United States Magistrate Judge