# EXHIBIT C

Statement of Work Number 1 - Revised

# EXHIBIT C



300 South 4th Street, Suite 600
Las Vegas, NV 89101-6017
O 702.759.4000   F 702.759.4063
www.mcgladrey.com

# Aruze Gaming America, Inc.
## Statement of Work Number 1 - Revised
## Transfer Pricing Study – FYE 2014
## Intangible Property

This document is a scope revision to statement of work number 1 ("SOW") dated June 25, 2013 under the master services agreement also dated June 25, 2013 (the "MSA") between Aruze Gaming America, Inc. ("Aruze," "AGA," or the "Company") and McGladrey LLP. Once signed on behalf of each party below, this statement of work will be deemed a part of the MSA and will be subject to all the terms of the MSA.

### Background

Aruze is considering restructuring its business operations. As part of the restructuring, the Company may transfer certain intangible property ("IP") from AGA to its Hong Kong affiliate, Aruze Gaming (HK) Ltd. ("AGHK"). Aruze will need to create a transfer pricing model to value existing IP residing in the U.S. Once Aruze has implemented such a strategy by moving forward with the transfer of IP, the transfer pricing models will need to be finalized and the proper documentation prepared to justify the transfer pricing from a U.S. and foreign income tax perspective.

### Project Description

We will perform the following transfer pricing services (the "Services") as follows:

Assist AGA in preparing a transfer pricing analysis and documentation report for fiscal year-end ("FYE") 2015 related to the intercompany sale and transfer of certain IP from AGA to AGHK. The analysis will be based on transfer pricing methods described in U.S. Treasury Regulations §1.482-4 and will apply specified or unspecified methods to arrive at an arm's length result.[1]

This project will be divided in two Phases: Phase I Modeling and Planning, to determine the range of arm's length prices for the aforementioned transaction; and Phase II Documentation, which entails completion of U.S. transfer pricing documentation for the intercompany transaction.

<u>Phase I: IP Transfer Pricing Modeling and Planning</u>

    a. Review of the Company's operating structure and fact-finding

        i. Collection and review of company documents to understand intercompany transfers, intellectual property, markets, organization, financial performance and other general background necessary;
        ii. Interview of key management personnel, as necessary, in order to define the IP as it relates to the intercompany transaction being analyzed;

---

[1] As permitted under U.S. Treasury Regulations §1.482-4(d).

Member of the RSM International network of independent accounting, tax and consulting firms.

011

CONFIDENTIAL                                                                                                  AGA00227802

Mr. Bryan Coy
Aruze Gaming America, Inc.
Statement of Work No. 1 – Revised
December 10, 2014
Page 2

      iii. Industry analysis to support the assumptions used in the valuation and economic analysis; and
      iv. Functional analysis to define the key economic issues and the allocation of economically significant functions and risks between the related parties with respect to their intercompany transaction.

  b. Transfer Pricing Methodology

      i. Development of transfer pricing methodology for sale of the IP under methods specified in the U.S. Treasury Regulations § 1.482-4
      ii. Determine an arm's length price range for the controlled transaction
      iii. Prepare a summary of the results
      iv. Discussions related to understanding and results

Phase II: U.S. Transfer Pricing Documentation

McGladrey will assist AGA in preparing a FYE 2015 transfer pricing documentation report for the intercompany transaction related to sale and transfer of the IP. The report will be written to meet documentation requirements under U.S. Treasury Regulations. § § 1.6662-6(d)(2)(iii)(B)(1) through (10),[2] which include among other items:

1. An overview of your business;
2. A description of your organizational structure;
3. Copies of documents required under the regulations;
4. A description of the transfer pricing method selected and why;
5. A description of transfer pricing methods not selected and why;
6. A description of controlled transactions and any internal data used to analyze them;
7. A description of comparables used, how comparability was evaluated and what adjustments were made;
8. An explanation of the economic analysis and projections relied on in developing the method;
9. A description of any information relevant to the report that was discovered after the applicable FYE, where applicable; and
10. A general index of the documents used for the report and their location.

Other intercompany transactions,[3] if any, will be assumed to be at arm's length for purposes of our study and they will not be analyzed separately unless otherwise agreed under separate

---

[2] Penalty protections in the U.S., or exceptions, are when a taxpayer had reasonable cause and acted in good faith with respect to its transactions. The U.S. Treasury Regulations also provide that a taxpayer will be treated as having reasonable cause if the taxpayer meets the contemporaneous documentation requirements. Among other things, transfer pricing documentation provides for the most reliable measure of arm's length results under the principles of the best method rule.

[3] Other intercompany transactions are outside the scope of this SOW; e.g., intercompany sales of products, provision of services, loans, etc.

CONFIDENTIAL

Mr. Bryan Coy
Aruze Gaming America, Inc.
Statement of Work No. 1 – Revised
December 10, 2014
Page 3

cover. McGladrey will notify you of any additional transfer pricing issues uncovered during our research that go beyond the project scope noted.

Only the Services described above are covered by this SOW. The services covered by this SOW do not include assistance with the Company's contractual, accounting, and reporting requirements; also not included are other consulting services involving transfer pricing issues with other transactions, such as assistance with journal entries, intercompany agreements, secondary adjustments, issue resolution, and FIN 48 / ASC 740, among others.

**Fees**

Based on our experience and information received to date, we anticipate fees for the Services will be $55,000. Our fees are based on the time required for work performed, the complexity of any technical issues addressed, and the impact of any deadlines imposed by you or third parties. In addition, we will bill for any direct expenses (e.g., database costs, travel, etc.). We will submit our bill for services rendered on a monthly basis.

Our engagement with the Company is limited to the Services described herein. It is possible that technical complications and unforeseen costs may arise as we drill down on the facts and technical details. We will use our best reasonable efforts to manage such events as they arise within our agreed fee arrangement; however, it may be necessary to address some events outside the scope of this arrangement. We will alert you to such events as soon as reasonably possible after we become aware of them, present you with your reasonable alternatives, and seek your approval for any fee adjustments before performing any out-of-scope work.

**Period of Performance**

We recognize that the Company wishes to complete this project as quickly and as reasonably possible. McGladrey will complete its work in a timely manner; however, because this is a collaborative project, the project completion date will be determined in part by the Company. We will collaborate with the Company in setting target dates for each significant component of the project and we will work with the Company and its other advisors to complete work in a timely manner.

**Limitation on Liability**

We cannot guarantee that the methodology utilized, or any documentation that we provide, will result in a transfer price that is acceptable to the Internal Revenue Service or the taxing authorities of any other country. Therefore, you agree that any additional taxes, penalties, and interest related to transfer pricing adjustments that may be proposed by any taxing authority are the sole responsibility of Aruze and its affiliates and are not the responsibility of McGladrey.

Mr. Bryan Coy
Aruze Gaming America, Inc.
Statement of Work No. 1 – Revised
December 10, 2014
Page 4

**Oral Advice**

It is our policy to confirm to you in writing all tax advice upon which you may justifiably rely. Oral advice that is not confirmed in writing should be considered our preliminary reaction. You should not proceed in reliance on oral advice until receiving such written confirmation.

Sincerely,

**McGladrey LLP**

*[signature]*

Enrique Rayon, Ph.D.
Senior Manager, International Tax Services


Agreed and Accepted:

**Aruze Gaming America, Inc.**


_____     _____
Bryan Coy, Chief Accounting Officer          Date


cc: Alfonso Nuñez, McGladrey LLP

CONFIDENTIAL