Jay J. Schuttert, Esq. (Nevada Bar No. 8656)
David W. Gutke, Esq. (Nevada Bar No. 9820)
**EVANS FEARS & SCHUTTERT LLP**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
Email: jschuttert@efstriallaw.com
Email: dgutke@efstriallaw.com

David S. Krakoff *(pro hac vice)*
Preston Burton *(pro hac vice)*
Lauren R. Randell *(pro hac vice)*
Adam B. Miller *(pro hac vice)*
**BUCKLEY LLP**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Email: dkrakoff@buckleyfirm.com
Email: pburton@buckleyfirm.com
Email: lrandell@buckleyfirm.com
Email: amiller@buckleyfirm.com

Bruce R. Genderson *(pro hac vice)*
David M. Krinsky *(pro hac vice)*
Adam D. Harber *(pro hac vice)*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Email: bgenderson@wc.com
Email: dkrinsky@wc.com
Email: aharber@wc.com

*Attorneys for Plaintiff/Counter-Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNIVERSAL ENTERTAINMENT CORPORATION, a Japanese corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>ARUZE GAMING AMERICA, INC., a Nevada corporation, KAZUO OKADA, an individual,<br><br>        Defendants. | Case No.: 2:18-CV-00585 (RFB)(NJK)<br><br>**PLAINTIFF UNIVERSAL ENTERTAINMENT CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AGAINST UEC RELATED TO MR. TOKUDA'S WECHAT COMMUNICATIONS WITH SRB TECH** |
| ARUZE GAMING AMERICA, INC., a Nevada corporation, KAZUO OKADA, an individual,<br><br>        Counter-Claimants,<br><br>    vs.<br><br>UNIVERSAL ENTERTAINMENT CORPORATION, a Japanese corporation, ARUZE USA, a Nevada corporation, and JUN FUJIMOTO, an individual,<br><br>        Counter-Defendants. | **ORAL ARGUMENT REQUESTED** |

I.      **INTRODUCTION**

Defendants' Motion does not make the strong showing required to establish that they are entitled to the sanctions they seek.  The inferences they seek are founded on speculation inconsistent with the established facts.  Their Motion rests on the question of why Mr. Tokuda removed the WeChat application from his personal cell phone.  Defendants implore the Court to disregard Mr. Tokuda's sworn explanation that he removed it because he found the unsolicited messages he received on it were a nuisance, and substitute a baseless premise that he did it specifically to prevent Defendants from obtaining messages for this litigation.

Defendants do not offer any competing evidence or point to any facts calling Mr. Tokuda's explanation into doubt.  All the surrounding circumstances, from Mr. Tokuda's sworn statements about his use of the WeChat app, to Universal's extensive efforts to try and collect the messages, to the  tenuous relevancy of SRB Tech to the actual issues in this litigation, demonstrate that there is no basis for the Court to indulge Defendants' speculation.  Further, the question of whether communications with SRB Tech are even discoverable remains pending in Defendants' motion to compel the very same WeChat communications that are subject to this Motion.

But Defendants now seek sanctions to validate their innuendo that Universal's use of a public relations firm was somehow improper, and that Mr. Tokuda's use of a popular messaging app was a nefarious communications "back channel."  There is every reason to believe that the WeChat messages would be duplicative of the hundreds of emails Universal has already produced, and none of them would be relevant to the actual claims or defenses in this case.  The Motion should be denied.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

     **A.  Universal engaged the public relations consultant SRB Tech to help it report the facts about Mr. Okada's misconduct.**

The facts surrounding Mr. Tokuda's WeChat communications with SRB Tech are set forth in more detail in Universal's Opposition to Defendants' Motion to Compel Mr. Tokuda's WeChat Communications with SRB Tech.  Universal Ent. Corp.'s Opp'n to Defs.' Mot. to Compel Produc. of Mr. Tokuda's WeChat Comm'ns with SRB Tech ("MTC Opp."), ECF No. 543.  In sum,

Universal worked with a public relations professional named Shen Ruobin and his firm SRB Tech regarding press reporting about Universal's disputes with Mr. Okada following his departure from the company after an independent Special Investigation Committee concluded that he had stolen funds from the company on multiple occasions. *See* MTC Opp. at 4. SRB Tech carried out assignments that are typical for work of this nature, such as amplifying Universal's press releases in Asian media outlets, and clarifying facts about which shareholders and the general public had expressed confusion. *Id.* at 4-5.

### B. Defendants' Counterclaims do not concern SRB Tech.

In 2018, Defendants filed a sprawling set of counterclaims alleging that Mr. Okada is the innocent victim of an elaborate plot involving his wife and children, and Universal's President, Jun Fujimoto, that improperly resulted in his ouster from Universal's Board. *See* Defs.' Am. Answer to Universal's Second Am. Compl, Countercls. Against Universal, Aruze USA, and Jun Fujimoto ("Counterclaims"), ECF No. 58. Mr. Okada has asserted a defamation claim, alleging that Universal defamed him in three press releases concerning the patent claims in this case, and in criminal complaints filed with Hong Kong's ICAC and authorities in the Philippines. *Id.* ¶¶ 136-140, 174-181. And defendant AGA, Mr. Okada's wholly owned private company, alleged that Universal interfered with AGA's prospective contractual relationships with unspecified gaming regulators by issuing press releases and filing criminal complaints. *Id.* ¶¶ 191-193. None of these claims mention SRB Tech or any article written by that firm, nor do they allege that SRB Tech had any impact on any decision by a gaming regulator.

### C. Nonetheless, Universal agreed to produce scores of documents related to SRB Tech.

Despite the lack of any real connection to their Counterclaims, and the fact that almost three years had passed since filing them, Defendants issued a discovery request seeking (1) the "signed agreement" between Universal and SRB Tech (RFP 507); and (2) "all [d]ocuments [c]oncerning any agreements between UEC and SRB Tech" (RFP 499). *See* Miller Decl. Ex. 1 (Defendants' Reqs. for Produc. of Docs. (24th Set)). Universal objected to both requests as seeking irrelevant information, but after a meet and confer teleconference, agreed to produce responsive documents,

but did not concede any relevance to this lawsuit.  Miller Decl. Ex. 2, at 2 (Feb. 1, 2022 Letter from Mr. Miller to Mr. Downing).  To date, Universal has produced hundreds of pages of documents concerning SRB Tech, many of which consist of email messages sent or received by Mr. Tokuda.  Miller Decl. ¶ 7.

In one such email, Mr. Tokuda indicated that he had sent a short message to SRB Tech over WeChat, and *copied the entirety of that message into his email*.  *See* Miller Decl. Ex. 3 (May 15, 2018 email from Mr. Tokuda to Mr. Fujimoto explaining that he "sent a message to Mr. Shen via WeChat with the following content" and then pasting the content, Bates No. UEC_00398556).  At the same time, Mr. Tokuda sent an email to Mr. Shen—an email that Universal produced— conveying the very same requests.  *Compare* Miller Decl. Ex. 4 (May 14, 2018 email from Mr. Tokuda to Mr. Shen requesting SRB Tech to amplify articles with potential impact of Mr. Okada's misconduct on AGA, Bates No. UEC_00527023) *with* Miller Decl. Ex. 3 (May 15, 2018 email from Mr. Tokuda to Mr. Fujimoto copying WeChat message with same request, Bates No. UEC_00398556).  Taken together, these documents show that Mr. Tokuda sent duplicative WeChat and email messages to SRB Tech.

As detailed in Universal's opposition to the Motion to Compel, after receiving this document in discovery, Defendants asked and Universal agreed to investigate whether Mr. Tokuda and SRB Tech had communicated over WeChat and whether any such messages had been collected and produced.  *See* MTC Opp. at 6.  During a subsequent meet and confer, Universal informed Defendants that it was working with a vendor in relation to Mr. Tokuda's WeChat account.  *See id.*

**D.  Universal made substantial efforts to collect Mr. Tokuda's WeChat communications with SRB Tech.**

Universal worked with e-discovery vendor KLDiscovery OnTrack K.K. ("KLD") to attempt to collect Mr. Tokuda's WeChat communications.  *See* Declaration of KLD ("KLD Decl.") ¶ 3, ECF No. 543-10.  Universal agreed to do so despite Mr. Tokuda's explanation that he did not often communicate with SRB Tech through WeChat—email was their primary means of communication. *See* Declaration of H. Tokuda ("Tokuda Decl.") ¶¶ 3, 6, ECF No. 543-9.  Universal's collection efforts required coordination between individuals in three countries—lawyers in the United States,

KLD employees based in Japan, and Mr. Tokuda who lives in the Philippines.  Although Mr. Tokuda had previously removed the WeChat application from his personal phone because he was receiving too many unsolicited messages from contacts in China that he no longer wished to hear from, he reinstalled the application and agreed to have KLD remotely image his phone to confirm whether any WeChat messages could be recovered.  Tokuda Decl. ¶ 7; KLD Decl. ¶¶ 4–7.

Universal's collection efforts were delayed when the necessary hardware, which was being shipped to Mr. Tokuda's location from Japan, was held by the Philippine Bureau of Customs, and again when the network security at Universal's Philippine subsidiary (Tiger Resort Leisure and Entertainment, Inc. or "TRLEI") prevented KLD from establishing a stable remote connection.  KLD Decl. ¶¶ 7–9.  While Universal was attempting to find an alternate solution, Kazuo Okada and his collaborators violently took control of TRLEI's offices and casino resort in the Philippines— they cut the power, stormed a TRLEI shareholders' meeting at the resort with brute force, and physically dragged Mr. Tokuda out.  *See* MTC Opp. at 7.  Mr. Okada and others have now been charged with coercion by authorities in the Philippines as a result of these actions.  *See* Ex. 5 (*Drama continues: Okada arrested in Manila*, Philippines Daily Inquirer, Oct. 19, 2022).

These events further delayed Universal's collection efforts.  KLD Decl. ¶ 10.  Consequently, a KLD representative had to travel to the Philippines in July 2022 to conduct an in-person imaging of Mr. Tokuda's phone.  KLD Decl. ¶ 11.  Through these efforts, KLD confirmed no WeChat messages remained on his phone for collection.  KLD Decl. ¶¶ 12-13.

### E.  Defendants filed a moot motion to compel Mr. Tokuda's WeChat communications.

While these collection efforts were underway, Defendants filed their Motion to Compel Mr. Tokuda's WeChat communications with SRB Tech.  *See* Defs.' Mot. to Compel Prod. of H. Tokuda's WeChat Commn's with SRB Tech ("Motion to Compel"), ECF No. 510.  In opposition to this Motion to Compel, Universal argued that the documents sought regarding SRB Tech were irrelevant and not proportional to the needs of the case.  *See* MTC Opp.  In addition, Universal argued that the Motion to Compel was moot and relayed the facts set forth above regarding its unsuccessful attempts to collect Mr. Tokuda's WeChat communications.  *Id.*  In response,

Defendants promised that a motion for sanctions was forthcoming.  *See* Defs.' Reply in Supp. of the Mot. to Compel, ECF No. 545.  To date, the Court has not ruled on Defendants' Motion to Compel.  Thus, it has not been established whether the WeChat communications with SRB Tech are even properly subject to discovery at all.

## III.  ARGUMENT

Defendants fail to carry their burden at each step of the analysis required by Rule 37(e).  First, Defendants fail to establish each of the three prerequisite factors of Rule 37(e).  They have not shown Universal had a duty to preserve Mr. Tokuda's WeChat communications.  Nor have they have shown that the inability to collect Mr. Tokuda's WeChat communications was caused by Universal's failure to take reasonable steps to preserve ESI.  And, finally, they have not shown that Mr. Tokuda's WeChat communications are an irreplaceable source of information that is material to resolving the claims in this case.  The failure to establish even one of these three factors means the Motion must be denied.

The Motion fails at the next steps of the analysis as well.  The Motion primarily requests an adverse inference instruction under Rule 37(e)(2), but Defendants cannot show that they are entitled to this relief because there is no basis for the Court to find that Mr. Tokuda acted with the intent to deprive Defendants of the use of the WeChat communications in this litigation.  The Motion also includes a cursory request for attorneys' fees under Rule 37(e)(1), but Defendants have not made the showing of prejudice that is required for that relief either.  Therefore, Defendants are not entitled to any of the relief they seek, and the Motion should be denied completely.

### A.  Defendants are not entitled to sanctions because they cannot establish the three factors required under Rule 37(e).

To establish that they are entitled to sanctions under Rule 37(e), the moving party must first prove the following three elements:  "1. The nonmoving party should have preserved the ESI in the anticipation or conduct of litigation. 2. The nonmoving party lost the ESI because it failed to take reasonable steps to preserve it. 3. Additional discovery cannot restore or replace the ESI." *Winecup Gamble, Inc. v. Gordon Ranch, LP*, 2020 WL 3840420, at *2 (D. Nev. July 8, 2020), *rev'd in part, vacated in part on other grounds*, 850 F. App'x 573 (9th Cir. 2021).

Each of Rule 37(e)'s three factors must be established by the moving party.  *Keenan v. Maricopa Cnty. Special Health Care Dist.*, 2022 WL 684348, at *3 (D. Ariz. Mar. 8, 2022) ("The party seeking spoliation sanctions bears the burden of establishing that such measures or sanctions are warranted.").  The failure to establish even one of them means that the request for sanctions must be denied.  *See* Fed. R. Civ. P. 37(e).  Therefore, Defendants' failure to establish all the prerequisites for relief under Rule 37(e) is a sufficient basis to deny the Motion in its entirety.

### 1.    Universal's duty to preserve is not unlimited in scope, and does not include the irrelevant WeChat communications at issue.

Defendants have not established that Universal had a duty to preserve the WeChat communications with SRB Tech.  (In fact, the discoverability of the WeChat communications is at issue in the pending Motion to Compel underscoring that Defendants' request for sanctions is premature.)  In the Motion, Defendants claim that this element is established merely because Mr. Tokuda was aware of the litigation, signed a litigation hold, and had been briefed on his obligations to preserve his ESI.  Mot at 10.  But that is not enough to show that a duty to preserve existed as to the WeChat communications at issue in the Motion.

Parties are only obligated to preserve *discoverable* ESI, meaning ESI that is relevant and proportional to the needs of the case.  *See Paul v. USIS Com. Servs., Inc.*, 2007 WL 2727222, at *1 (D. Colo. Sept. 17, 2007) ("A party has no duty to preserve information that is not discoverable . . . ."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (observing that companies are not required to preserve "every shred of paper, every e-mail or electronic document, and every backup tape").  In the context of Rule 37(e), "limiting sanctions to the failure to preserve *relevant* ESI makes complete sense on many levels, including the lack of prejudice in the loss of irrelevant ESI and the lack of a need to even produce irrelevant ESI, let alone preserve it."  *Snider v. Danfoss, LLC*, 2017 WL 2973464, at *4 (N.D. Ill. July 12, 2017), *report and recommendation adopted*, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017) (relevance of lost messages from an email account was "minimized by the existence" of messages from the address that were collected from other custodians) (emphasis added).

/ / /

As explained further in Universal's opposition to the related Motion to Compel, the WeChat messages at issue are not relevant to the claims and defenses in this action. *See* MTC Opp. Defendants claim the communications could theoretically be relevant to their counterclaims "for intentional interference with prospective economic advantage and defamation." Motion to Compel at 14; Counterclaims ¶ 191. In their intentional interference with prospective economic advantage claim, Defendants allege Universal interfered with Defendants' prospective relationships with unspecified "gaming regulators."[1]   Counterclaims ¶ 191; Motion to Compel at 14. But not one of the hundreds of pages of documents regarding SRB Tech that Universal has produced contains evidence that any communication between Mr. Tokuda and SRB Tech in Asia was shared with a gaming regulator or otherwise had any impact on a decision by a gaming regulator.

Defendants' defamation counterclaim does not offer any justification either. Defendants' defamation claim alleges that certain Universal notices published on its website were defamatory. Counterclaims ¶¶ 132-145, 175-181. But there is no evidence that SRB Tech played any part in the publication of Universal's own notices. And no articles published in the Chinese media with SRB Tech's assistance are mentioned in Defendants' defamation counterclaim or their response to Universal's interrogatories asking Defendants to list the allegedly defamatory statements. *See id.*; Miller Decl. Ex. 6 (AGA's Resp. to Interrog. No. 1); Miller Decl. Ex. 7 (Okada's Resp. to Interrog. No. 2). Even though Defendants purport to seek damages for an alleged "smear campaign" conducted with SRB Tech's help, the fact remains that after four years, Defendants have yet to identify a single statement in a single SRB Tech article that they allege is defamatory. If SRB Tech's articles are not alleged to be defamatory, communications about efforts to have those articles published cannot be relevant to a defamation claim.

In ruling on the pending Motion to Compel, the Court may well determine that the WeChat communications are not discoverable. If these communications were available for collection, they

---

[1] While Defendants' intentional interference with prospective economic advantage claim also alleges interference with "customers, potential customers, and potential investors," Defendants do not argue that the SRB Tech communications are relevant to such prospective relationships or even to any existing contractual relationships. Counterclaims ¶ 191; Motion to Compel at 14.

would be merely cumulative of the scores of other documents regarding SRB Tech that Universal has produced from other sources.  Therefore, Defendants have not shown that these messages are discoverable in the first place, a prerequisite to establishing that Universal had a duty to preserve them.  Thus, their request for sanctions must be denied.

**2.    Universal Has Taken Reasonable Steps to Preserve its ESI.**

The fact that Mr. Tokuda removed the WeChat application from his phone does not mean that Universal has not taken reasonable steps to preserve ESI in connection with this litigation.  To the contrary, Universal has undertaken great efforts to preserve information in connection with this litigation, and went to great lengths to try to collect Mr. Tokuda's WeChat communications.  *See* Part II.D *supra*.  Its actions have been completely reasonable, and it would be inappropriate to sanction Universal for Mr. Tokuda's decision to remove the WeChat app from his personal phone.

Another court has found that Rule 37(e) sanctions were not warranted where the nonmoving party "systematically investigated, disclosed, and took remedial action" to try and recover the ESI upon discovering the loss of ESI that included individual employees' cell phones that were discarded in contravention of legal hold.  *Johnson v. L'Oreal USA*, 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020) "Discovery must be reasonable, not perfect," the court observed, adding that the moving party was "not entitled to every single document that could possibly have existed." *Id.*  That should be the result here, too.

Universal issued multiple litigation holds to preserve information that might need to be collected and produced in the future for this lawsuit.  In May 2018, a litigation hold was sent to Universal senior managers and executives, including Mr. Tokuda, which included directives to preserve all cell phones and ESI and was coupled with a meeting with senior managers to explain the importance of the discovery process, and an updated litigation hold that was sent in Fall 2019 to even more people, again including Mr. Tokuda.  Miller Decl. ¶ 4.  The litigation holds explicitly stated that they superseded Universal's normal records management policies.  *Id.* ¶ 5.  In complying with their overall discovery obligations in this matter, Universal and its counsel have collected and searched sources reasonably likely to contain potentially responsive information.  *Id.* ¶ 6.  This

included tens of millions of documents, including Universal's entire email system (not just individual mailboxes, which do not exist on Universal's system) and numerous file servers. *Id.* Universal has also collected and produced responsive messages from Mr. Tokuda's personal email account. *Id.* ¶ 9.

Mr. Tokuda's removal of the WeChat app from his phone was akin to an intervening cause that frustrated Universal's reasonable steps to preserve ESI, as demonstrated by its efforts in this regard described above. As detailed in its opposition to the related motion to compel, Universal pursued every available option to try and collect Mr. Tokuda's WeChat communications. *See* MTC Opp. Therefore, sanctions against Universal in these circumstances are unwarranted.

### 3. Any other WeChat communications with SRB Tech that might have existed can be adequately replaced though the available information regarding Universal's relationship with SRB Tech.

To establish this final prerequisite factor, Defendants must show that Mr. Tokuda's WeChat communications with SRB Tech contained information that cannot be recreated or replaced from other sources. But Defendants offer only naked speculation that the contents of the WeChat communications must somehow be worse than what Defendants view as damning admissions made in email messages regarding SRB Tech's work for Universal. Mot. at 12. Nothing in the surrounding circumstances supports this view, and Defendants' invocation of innuendo is insufficient to meet their burden.

The WeChat communications are not irreplaceable. Defendants have the contents of one WeChat message in the email version sent by Mr. Tokuda. *See* Miller Decl. Ex. 3 (May 15, 2018 email from Mr. Tokuda to Mr. Fujimoto explaining that he "sent a message to Mr. Shen via WeChat with the following content" and then pasting the content, Bates No. UEC_00398556). Overall, Universal has produced hundreds of pages of documents about SRB Tech, many of which are communications involving Mr. Tokuda. None of these documents support Defendants' speculation.

To establish that ESI is lost for purposes of Rule 37(e), the moving party's speculation is insufficient, rather they "must at least show that categories of irreplaceable relevant documents were likely lost," and cannot rely on inferences coupled with a "scant showing" that some ESI may

have been lost.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 553 (N.D. Cal. 2018).  This is true even despite the "difficulty in identifying documents [the moving party] has not received because they have been deleted."  *Id.*  In the *Oracle* decision, the Northern District of California declined to infer that any ESI had been lost for purposes of Rule 37 even though some of an executive's emails had been deleted because the court found that it "could not reasonably infer that [the nonmoving party] improperly deleted troves of relevant documents."  *Id.*  The executive whose account was deleted submitted a declaration explaining that he had relatively few emails because he was not involved in day-to-day affairs and was merely kept apprised by his subordinates.  *Id.*

Deposition testimony can also be an adequate replacement for lost ESI, rendering sanctions under Rule 37(e) unavailable.  *Trading Places Int'l, LLC v. Summerwinds Resort Servs., LLC*, 2017 WL 6383983, at *2 (W.D. Mo. May 12, 2017).  In *Trading Places*, the court denied the moving party's request for sanctions because they were "able to ascertain the information by asking the individuals directly about the conversations and reasons leading to [the nonmoving party's] actions. Therefore, any lost information can be 'replaced' by relying on answers witnesses provided during their depositions."  *Id.*  Indeed, Defendants will be able to further explore this issue at the upcoming depositions of Mr. Tokuda, other Universal executives, and Universal's 30(b)(6) designee.  Miller Decl. Ex. 8, at 23 (July 27, 2022 Notice of 30(b)(6) Dep. of Universal) (topic number 76 asks for testimony regarding ". . . UEC's media campaign against Mr. Okada and/or AGA, including but not limited to UEC's engagement of SRB Tech . . . ."); Miller Decl. Ex. 9 (Aug. 26, 2022 Notice of Dep. of Mr. Tokuda).

Here, the universe of potential additional WeChat communications with SRB Tech is quite small, and there is no indication that they are of any significance to the claims and defenses at issue in this litigation.  Mr. Tokuda's declaration establishes that his primary means of communicating with Mr. Shen was via email, but they occasionally sent short messages over WeChat although Mr. Tokuda did not recall sending many WeChat messages. Tokuda Decl. ¶¶ 3, 6.  Defendants have not identified anything that contradicts Mr. Tokuda's explanation, or otherwise shows that Mr.

Tokuda's WeChat communications contained any relevant, discoverable information—let alone information that cannot be recreated from multiple other sources of information about Universal's relationship with SRB Tech that are available to Defendants.  As in *Trading Places*, this testimony could replace whatever information Defendants' premature Motion claims has been lost.[2]

Defendants' speculation about the content of Mr. Tokuda's WeChat communications is completely unsupported, and even contradicted by the surrounding circumstances.  The inference they ask the Court to draw in order to find that irreplaceable ESI has been lost is simply not reasonable in light of the circumstances.  Defendants have failed to show that any ESI was "lost" within the meaning of Rule 37(e).

**B.   Defendants are not entitled to sanctions under either prong of Rule 37(e).**

Even if the moving party is able to establish all three prerequisites, which Defendants cannot, two kinds of sanctions are available, but each requires proof of an additional element.  *Id.*; Fed. R. Civ. P. 37(e).  If the moving party shows that they were prejudiced by spoliation, then the Court may "may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  If the moving party shows that the nonmoving party "acted with the intent to deprive another party of the information's use in the litigation," then the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2).  The bar for establishing the specific intent to deprive is very high, and even "grossly negligent" failures by the nonmoving party to preserve devices used by its employees are insufficient to show that they "purposefully destroyed the devices to avoid litigation obligations" if there is another reason the devices were not preserved.  *Keenan*, 2022 WL 684348, at

---

[2] Courts routinely deny requests for an adverse inference instruction under Rule 37(e)(2) as premature where the parties will be taking additional discovery relevant to the question of the nonmoving party's intent.  *See Pable v. Chi. Transit Auth.*, 2021 WL 4789023, at *3 (N.D. Ill. Apr. 2, 2021) (denying request for adverse inference instruction as premature "[g]iven the uncertainty over the extent of" the lost ESI that could be replaced from an archive); *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, 2017 WL 5953428, at *6 (S.D. Fla. Sept. 29, 2017) (denying request for sanctions because "the intent issue is a close call and one that will be better made after completion of all discovery").  This Court should do the same here.

*3 (no intent to deprive where employees' laptops were destroyed because of the nonmoving party's standard data destruction policy).

### 1.     Defendants are not entitled to an adverse inference instruction under Rule 37(e)(2) because Mr. Tokuda did not remove the WeChat application from his phone with the intent to deprive Defendants of the use of the messages.

Defendants bear the burden of proving that Mr. Tokuda removed the WeChat app from his phone for the specific purpose of depriving them of the use of these communications with SRB Tech in this litigation.  They have not met their burden because they have not put forth any evidence contradicting Mr. Tokuda's explanation that he removed the WeChat app from his phone because the unsolicited messages he received on it became a nuisance.  There is simply no basis from which the Court could reasonably find that Mr. Tokuda acted with the intent to deprive Defendants of these communications, and the Motion must be denied.

Because they lack evidence, Defendants ask the Court to draw an inference.  But, that request ignores that Mr. Tokuda has explained why he did what he did—and Defendants provide no facts to contest that explanation.  Defendants cite two cases in which the courts drew such an inference, but none of the circumstances relied upon by the courts in those cases exist here.  First, unlike in *Colonies Partners*, Mr. Tokuda did not regularly and systematically delete information that he knew was "relevant and material" to the litigation.  *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *1 (C.D. Cal. Feb. 27, 2020), *adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) (inferring intent to deprive where the nonmoving party failed to suspend his "routine destruction practice" of erasing text messages).  And Universal is not "seeking to take advantage of" the situation by affirmatively arguing that the WeChat communications would support its position, like the nonmoving party in *Decker v. Target Corp.*  2018 WL 4921534, at *4 (D. Utah Oct. 10, 2018) ("It is this attempt to take advantage of a situation that Target caused that leads the court to conclude Target acted in bad faith.").

Rather, the present circumstances are more akin to cases where courts have declined to infer an intent to deprive due to testimony from the nonmoving party that provides an alternate explanation for their actions.  For example, the Ninth Circuit considered a case where the moving

13

party, a § 1983 plaintiff, argued that the circumstances supported finding an intent to deprive where the defendant officer discarded his cell phone that contained a video of the arrest at issue in the litigation. *Anderson v. Armour*, 2021 WL 5985014, at *1 (9th Cir. Dec. 16, 2021). But the court disagreed and found there was no intent to deprive because "[t]he only evidence presented on [the officer's] reason for disposing of the cell phone was [his] testimony that the cell phone broke and no longer worked." *Id.* Another court reached a similar result based on the nonmoving party's testimony that she deleted her twitter account after the filing of the complaint because "she no longer had a use for it." *Santoni v. Mueller*, 2021 WL 6752311, at *3 (M.D. Tenn. Sept. 3, 2021) (finding no intent to deprive because "the record evidence does not support a culpable state of mind required for severe sanctions"). These cases aptly demonstrate that even showing the intentional destruction of ESI in suspicious circumstances is not enough—more is required to establish the specific intent to deprive.

There is no basis to find that Mr. Tokuda acted with the intent to deprive because his sworn declaration is directly contrary to Defendants' speculation. Universal's efforts to recover the WeChat communications and its production of the email containing the content of one of the WeChat communications is incompatible with Defendants' allegation of an intent to deprive them from receiving pertinent evidence. In a similar situation, a court found that the fact that the nonmoving party produced email messages that reproduced the contents of some chat messages sent from an app on a phone that was not preserved indicated that there was no intent to deprive. *See EBIN New York, Inc. v. SIC Enter., Inc.*, 2022 WL 4451001, at *10 (E.D.N.Y. Sept. 23, 2022) ("[E]ven though [p]laintiff should have downloaded and preserved the relevant smart phones more promptly, [d]efendants have not shown that it is more likely than not that [p]laintiff intended to deprive [d]efendants of the ESI . . .").

Mr. Tokuda removed the WeChat app from his phone because it had become a nuisance; not to deprive Defendants of the WeChat communications. Defendants have offered nothing to contradict or undermine his explanation. Instead, they ask the Court to reach a speculative inference that is completely unwarranted and improper in light of direct evidence addressing the

critical question of Mr. Tokuda's intent.  There is no basis to find that he, much less Universal, acted with the intent to deprive, and the Motion must be denied.

### 2.  Defendants are not entitled to attorney's fees under Rule 37(e)(1) because they have not been prejudiced.

The Motion includes a cursory request for attorney's fees as a sanction under Rule 37(e)(1).  But Defendants fail to identify any prejudice they have suffered as required by Rule 37(e)(1).  Fed. R. Civ. P. 37(e)(1) ("upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice").  In fact, Defendants did not even try to make the requisite showing.  Their request for attorney's fees under Rule 37(e)(1) must be denied.

Defendants offer no explanation establishing their prejudice, and instead claim that they are entitled to Rule 37(e)(1) sanctions because Universal and Mr. Tokuda "can show no substantial justification or other circumstances making an award of expenses unjust."  Quite the contrary, any sanction under Rule 37(e)(1) would be completely unjust because Defendants have not even attempted to show prejudice as the Rule requires.

In deciding whether the loss of the ESI at issue was prejudicial, courts must consider the importance of the information to the case.  *Keenan*, 2022 WL 684348, at *3.  Where the party seeking sanctions possesses other information relevant to the same issue, sanctions are not warranted where the impact of the lost ESI on the "overall evidence collected[] would likely be marginal, at best."  *Id.* (moving party was not prejudiced by loss of laptops that might have contained additional evidence of retaliatory conduct where he had already filed a motion seeking summary judgment on the issue).

It is impossible to imagine that Defendants have suffered any prejudice at all given that they already have an abundance of other evidence on the issue of Universal's relationship with SRB Tech.  Moreover, Defendants' allegations about SRB Tech are not an important issue in the overall scope of this litigation.  Indeed, SRB Tech's work for Universal might only be barely—if even at all—relevant for purposes of discovery.  Accordingly, the absence of the small number of short

WeChat communications at issue cannot conceivably prejudice Defendants' ability to pursue their claims in this case. Their request for attorney's fees must be denied.

**IV.     CONCLUSION**

This Court should reject Defendants' Motion for sanctions. They fail to meet their burden of proof on this issue and invite the Court to elevate speculation and innuendo to fact. The Court should decline that invitation. For these reasons and the others specified herein, Universal respectfully requests that the Court deny Defendants' Motion.

DATED: October 27, 2022                         Respectfully submitted,

By: */s/ Jay J. Schuttert*
Jay J. Schuttert, Esq.
Nevada Bar No. 8656
David W. Gutke, Esq.
Nevada Bar No. 9820
**EVANS FEARS & SCHUTTERT LLP**
6720 Via Austi Parkway, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 805-0290
Email: jschuttert@efstriallaw.com
Email: dgutke@efstriallaw.com

David S. Krakoff *(pro hac vice)*
Preston Burton *(pro hac vice)*
Lauren R. Randell *(pro hac vice)*
Adam Miller *(pro hac vice)*
Bradley A. Marcus *(pro hac vice)*
**BUCKLEY LLP**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Email: dkrakoff@buckleyfirm.com
Email: pburton@buckleyfirm.com
Email: lrandell@buckleyfirm.com
Email: amiller@buckleyfirm.com
Email: bmarcus@buckleyfirm.com

Bruce R. Genderson *(pro hac vice)*
David M. Krinsky *(pro hac vice)*
Adam D. Harber *(pro hac vice)*
Matthew W. Lachman *(pro hac vice)*
Sarahi Uribe *(pro hac vice)*
Nicholas Jordan *(pro hac vice)*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024

Telephone: (202) 434-5000
Email: bgenderson@wc.com
Email: dkrinsky@wc.com
Email: aharber@wc.com
Email: mlachman@wc.com
Email: suribe@wc.com
Email: njordan@wc.com

*Attorneys for Plaintiff/Counter-Defendants*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on the 27th day of October 2022, a true and correct copy of the foregoing

3  **PLAINTIFF   UNIVERSAL   ENTERTAINMENT   CORPORATION'S   OPPOSITION   TO**

4  **DEFENDANTS'   MOTION   FOR   SANCTIONS   AGAINST   UEC   RELATED   TO   MR.**

5  **TOKUDA'S   WECHAT   COMMUNICATIONS   WITH   SRB   TECH** was  served  on  counsel  of

6  record using the Court's CM/ECF System.

7

8

9

10                                                                        */s/ Faith Radford*
                                                                      An Employee of Evans Fears &
11                                                                    Schuttert LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28